O'DONNELL, Respondent, v. MERCHANTS' MUTUAL IN-
SURANCE ASSOCIATION, Appellant.

(210 N. W. 509.)

(File No. 5238.    Opinion filed October 22, 1926.)

**Insurance—Agency—Plaintiff Held Not Entitled to Recover Against
Insurance Company for Failure to Issue Policy According to
Agent's Agreement.**

In action against insurance company for failure to issue policy, so as to protect plaintiff under alleged agreement by defendant's agent, plaintiff held not entitled to recover.

---

Note.—See, Headnote, American Key-Numbered Digest, Insur
ance, Key-No. 128(2), 32 C. J. 181.

Campbell, J., and Gates, P. J., dissenting.

Appeal from Circuit Court, Spink County; Hon. ALVA E.
TAYLOR, Judge.

Action by M. J. O'Donnell against the Merchants' Mutual Insurance Association. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed.

*Sterling, Clark & Grigsby,* of Redfield, for Appellant.

*Ezra L. Baker* and *L. W. Crofoot,* both of Aberdeen, for Respondent.

POLLEY, J. Plaintiff entered into a contract with one La Croix for the purchase of a certain lot with the building and certain equipment thereon used for a butcher shop. The contract was entered into on the 20th day of November, 1919. The

purchase price was $5,000; $2,000 of which was paid when the contract was made, and the balance was payable in three equal annual payments thereafter.   The title to the property was to remain in La 'Croix until fully paid for.   At the time of making the contract La Croix had a policy of insurance, issued by defendant company, insuring the property for $2,000.   This policy by its terms expired on the 11th day of December, 1919.   By an understanding between plaintiff and La Croix, plaintiff was to keep the property insured for the benefit of La Croix to the extent of his interest.   On December 3, 1919, plaintiff wrote the following letter:

"Merchants' Mutual Ins. Ass'n, Redfield, S. Dak.—Mr. H. N. Pool: In regard to the insurance on the meat market, as I have bought this property on contract and would like to have you come up if possible this week, if not let me know at once.

"Yours truly,                              M. J.O'Donnell."

This letter was addressed to Mr. Pool at Redfield.   It reached Redfield during Pool's absence and was turned over by a member of his family to defendant company.   In reply to this letter defendant wrote plaintiff as follows:

"December 9, 1919.

"M. J. O'Donnell, Mellette, S. D.—Dear Sir:  Wish to acknowledge receipt of your letter in regard to your having bought the meat market at Mellette on contract and would like to have our Mr. Pool come up this week and arrange for the insurance on this property.

"Owing to the fact that Mr. Pool is out on another territory, we are going to handle this matter direct with you by mail, and we are inclosing application blank which we wish you would fill out and return to us.   Kindly state where the meat market is located, the value of the building and contents and the amount of insurance desired, the date it is to take effect, and such other information as is asked for on the blank.

"If you will fill this blank out and return to us we will be in a position to issue a policy.   We have just renewed Policy 15124 in favor of G. B. La Croix; this policy covers $1,500 on the meat market building and $1,500 on furniture and fixtures, and we are wondering if it is Mr. La Croix's intention to keep this policy.

Wish you would kindly talk the matter over with him and advise us by return mail.

"Thanking you for your letter of recent date and trusting that we may hear from you by return mail, we remain."

Plaintiff did not fill out the blank as requested nor answer the letter, and on the trial swore he never received it. On December 11th, the day on which the old policy expired, he wrote defendant as follows:

"Merchants' Mutual Ins. Ass'n, Dr., Redfield, S. D.: Please find inclosed check for $92.44 for insurance shop and fixtures for G. B. La Croix, Mellette, S. D.

"Yours truly,                                        M. J. O'Donnell."

In reply to this letter defendant wrote plaintiff as follows:

"December 12, 1919.

"M. J. O'Donnell, Mellette, S. D.—Dear Sir: Wish to acknowledge receipt of your letter of the 11th in which you inclosed checks in the amount of $92.44 in payment of insurance on shop and fixtures for G. B. La Croix.

"We understand that you have purchased the shop and fixtures from Mr. La Croix, and wonder if it would not be best for the insurance to be made out in the name of Mr. La Croix, with a loss payable clause to you and Mr. La Croix as your interest may appear. Mr. Pool informed us that the insurance was to run in the name of Mr. La Croix, but we presume that it would be better to have a clause attached in favor of yourself.

"Kindly let us hear from you in regard to this and oblige.

"Yours very truly,                                        Ass't Sec'y."

Plaintiff did not answer this letter, and on the trial swore he never received it. On or prior to November 21, 1919, the Mr. Pool above mentioned saw and talked with plaintiff at Mellette, and on November 21, 1919, Pool wrote defendant from Mellette as follows:

"Mellette, S. D.   11-21-19.

"Mr. N. S. Tyler, Sec'y., Redfield. Dear Sir: Find inclosed applications. * * * M. J. O'Donnell from Stratford is buying out G. B. La Croix meat market here, stock, bldg., and fix. Merch. Mutual policies No. 13531-13108. As soon as the deal is completed

will let you know about the insurance. Would do nothing about it today.

"Yours truly,                                        H. N. Pool."

"Since writing this letter have seen Mr. La Croix. He said he had sold the meat market, but that the insurance policies were to be renewed in his name."

Plaintiff testified at the trial that he had a conversation with Pool at Mellette after entering into the contract with La Croix and prior to December 3, 1919, in which he explained the conditions of the contract, and that Pool agreed to have the property insured so as to protect the interests of both plaintiff and La Croix. Pool denied having made any such agreement; and the undisputed evidence shows that a renewal policy for $3,000 covering the period from December 11, 1919, to December 11, 1920, had been issued and forwarded to La Croix, prior to the writing of the letter of December 3d by respondent, and no change was thereafter made in the policy, nor any policy written by appellant pursuant to such letter or to the conversation claimed to have been had with Pool.

Plaintiff testified that he did not see Pool again until the latter part of November or the 1st of December, 1920, but prior to December 11, 1920, when he again saw him at the meat market in Mellette; that they had a conversation at that time in which Pool agreed that the insurance policy should be so prepared as to protect the interests of both plaintiff and La Croix. But the undisputed evidence shows that the renewal policy for $3,000 covering the period from December 11, 1920, to December 11, 1921, insuring the interest of La Croix only, had been issued and delivered to La Croix before this conversation took place, and no policy was ever issued thereafter or any changes made in the policy already issued. La Croix delivered this policy to plaintiff on or about the 1st of January, 1921, and it was retained by him until the 21st of March, when the property was totally destroyed by fire. After the fire plaintiff examined the policy, and for the first time, as he claims, learned that his interest in the property was not insured. Thereafter plaintiff and La Croix presented a joint proof of loss, in which La Croix claimed $2,000 and plaintiff $1,000. Shortly prior to the fire plaintiff had paid La Croix $1,000 on the pur-

chase price of the property. Defendant paid La Croix $2,000 as the value of his interest but refused to pay plaintiff on the ground that his interest was not insured and that he was not a party to the contract. Plaintiff then brought this suit to recover damages for defendant's "failure to issue a policy of insurance in such form as to protect G. B. La Croix, vendor, and M. J. O'Donnell, the plaintiff herein, as vendee, under an executory contract of sale."

The action therefore is based upon the alleged contract made by Pool, and the jury having found for plaintiff on this issue, we must assume that Pool attempted to make such contract. But defendant claims that Pool had no authority to make any such contract, and that such contract, if made as plaintiff claims it was, is not binding upon the defendant; and whether Pool had such authority is the only question to be determined in the case.

Pool was employed as a special agent for the defendant company, and upon the question of his authority he testified as follows:

"My duties in connection with my employment with the Merchants' Mutual Insurance Association are soliciting new business, making collections, inspecting risks and any matters of interest which may pertain to the company. I never issue any policies for the company. I am not authorized and have never been instructed to make any indorsements upon policies or attach any clauses thereto. After I have received an application for insurance I am instructed to send it to the office. The policies are issued at the home office at Redfield and not at any other place. I never issue any policies. In the event that I find there has been a change in the title, possession or control or hazard of the risk in some way, I report it to the company. I am not authorized to make any changes or alterations in the policy relative to any change in the title, or possession of property. I have never been instructed and have never been authorized by the company to make any agreements in regard to the manner in which their insurance policies should be issued. The company never authorized me to make any agreement with Mr. O'Donnell relative to the insurance policy that is in suit here. I never made any agreement with O'Donnell or had any transaction with him except the two conversations that I have related."

And upon this question the general manager of defendant company testified as follows:

"Mr. Pool is not an officer or director of the company. I have heard Mr. Pool's testimony and have heard his testimony in regard to the conversations of Mr. O'Donnell. Mr. Pool has never been authorized by this Company to issue policies. It is not within the scope of Mr. Pool's authority to sign any waivers or any of the conditions of the policies that we issue. He has nothing to do with that. Mr. Pool has never been authorized to consent to any change in ownership or make any agreement as to whom any policy shall be issued. We never authorized Mr. Pool to make any agreement with the plaintiff in this case relative to the issuance of any insurance to him. Mr. Pool solicits new business. He takes the application, and his instructions are to have the application filled out completely on our special blank for and signed by the party desiring the insurance. It is then sent to the home office by Mr. Pool, and after the application and all necessary information is contained in the application and approved, the policy is issued."

[1] This is all the evidence there is in the record touching upon Pool's authority. He had authority to solicit business and to collect premiums, and to examine risks and make reports, but he had no authority to issue policies or to waive conditions in policies, or make contracts for the company. Plaintiff cites Minneapolis Threshing M. Co. v. Darnall, 13 S. D. 279, 83 N. W. 266, as authority on this question. An examination of that case fails to show that the question of an agent's authority was involved in any manner whatever. Plaintiff also cites and relies on Pfiester v. Missouri S. Life Ins. Co., 85 Kan. 97, 116 P. 245. That case goes to the extent only of holding that:

"An agent for a life insurance company, whose authority is limited to negotiating for, taking and transmitting applications for the approval or rejection of the company, is the agent of the company, and not of the person whom he solicits to take insurance, and for those purposes he has all the power the company itself possesses."

—and also that:

"It is the duty of such an agent to prepare the application of a person solicited to insure, so that it will accurately and truthfully

state the result of the negotiations, and the agent's failure to do so is in legal effect the fault of the company."

[2]   But the question of the extent of the agent's authority to bind the company was not involved.   An insurance company is bound by the acts of a special agent to the extent only of the agent's authority.   Of course this rule would be modified by a general course of conduct on the part of the company or acts that would estop the company, from invoking the rule, but there is nothing of the kind in this case.   On the other hand, the conduct of the plaintiff strongly indicates to us that he never made any effort to insure jointly with La Croix or that he ever believed that he was so insured.   In the first place the policy that went into effect on the 11th day of December, 1919, was for exactly the amount of La Croix's interest in the property at that time as it was fixed by the terms of the written contract for the purchase of the property.   The letter written by plaintiff on the 3d day of December, 1919, did not signify that he wanted defendant to insure his interest in the property, and when he remitted the premium on that policy he expressly stated that it was in payment for the insurance "for G. B. La Croix."   ·   The second policy was for the same amount, and the evidence does not show that there had been any change in La Croix's interest up to that time.   In the second place, the record shows that plaintiff took out insurance in another company for the protection of his interest in the property.   Such insurance was in force at the time of the fire, and the policy issued by defendant was of so little concern to him that he never looked at it until after the fire.

The judgment and order appealed from are reversed.

KNIGHT, Circuit Judge, sitting in lieu of DILLON, J., concurs in result.·

CAMPBELL, J. (dissenting).   There was a dispute of fact in the instant case as to the origin of the policy of insurance outstanding upon the property at the time of the fire.   Appellant company claims that such policy originated in routine renewals of insurance issued to La Croix on the property at a time previous to the sale to respondent.   Respondent on the other hand contends that the policy had its origin in an oral agreement for the issuance thereof, made between himself and appellant's agent,

Pool, after respondent acquired his interest in the property, which oral agreement of the agent Pool respondent claims was fully performed by appellant company excepting only the portions thereof whereby Pool agreed that the policy when issued would be in such form as to protect the interests of both respondent and La Croix in the property in question. This fact question was submitted to the jury under proper instructions, and by their verdict they have decided all these controverted facts in favor of respondent, and there is no possible question but that the testimony of respondent himself, if believed by the jury, was ample to support the verdict.

Whether the provision is wise or not, it is of course elementary under our law that in cases such as the one at bar the credibility of witnesses and disputed questions of fact are for the jury, and this court has no right to substitute its views with reference thereto for the verdict of the jury except where it can properly be said that there is no substantial evidence in support of the verdict.

Notwithstanding this clear rule of law, the majority opinion in this case might easily and fairly be compressed into a single sentence reading about as follows: "We disagree with the verdict of the jury on the disputed facts, and the case is therefore reversed."

The absolute impropriety of thus invading the province of the jury is so apparent that the learned writer of the majority opinion has erected quite an elaborate structure, in a labored effort at camouflage, to the end that his view of the facts might be substituted for that of the jury without the appearance of so doing. Toward the closing of the opinion, however, the real ratio decidendi has inadvertently been permitted to appear by the use of this language:

"* * * The conduct of the plaintiff strongly indicates to us that he never made any effort to insure jointly with La Croix, or that he ever believed he was so insured."

—followed by a dissertation in support of a view of the facts contrary to the verdict of the jury.

The testimony of respondent in this case if believed by the jury being admittedly sufficient to justify the verdict, the agree-

ment or disagreement of members of this court with such verdict should be entirely disregarded. It is our duty to accept the facts as found by the verdict, and there remains for the court only the application of the law to the facts so determined, without regard to personal opinion or prejudice.

The majority opinion goes at some length into the question of whether or not appellant's agent Pool had authority to make the entire contract or agreement which respondent claims he made, and I think the majority opinion reaches the correct result on that point, but the decision of that question is not even remotely involved in this case excepting by absolutely disregarding the verdict of the jury. The jury by its verdict has necessarily determined that the agent Pool did make the agreement which respondent testifies was made, and, further, that thereafter and pursuant to said agreement, and not otherwise, the appellant company did and performed everything which Pool agreed they would do excepting only that by the willfulness or neglect of appellant company, or of its agent Pool, the policy which they issued and delivered pursuant to Pool's agreement failed to name respondent as a beneficiary party in addition to La Croix; that respondent fully performed the entire agreement on his part and did not know until after the fire that appellant company had omitted the performance of a portion of the agreement on its part. The appellant company having in fact executed Pool's agreement that it would issue and deliver a policy, the authority of the agent Pool to bind the company in that regard, and the question of whether or not company when advised of Pool's agreement in its behalf might have refused to perform the same had it so seen fit, are entirely immaterial. Certainly the appellant company cannot perform a part of the agreement made in its behalf by its agent Pool, accept respondent's money on the basis of full performance, and then when a loss arises blithely disclaim any responsibility for an unperformed portion of Pool's agreement vital to respondent. Assuming that appellant company was under no duty to recognize the agreement made in its behalf by its agent Pool, nevertheless the appellant company must take or leave such agreement in its entirety, It cannot execute part of the agreement and disregard the remainder, meanwhile receiving and retaining respondent's money on a basis of complete performance.

This is not an action upon a written contract of insurance, but is an action for damages for failure to perform an oral agreement to make and issue a contract upon certain terms and conditions. The agent Pool testified that it was part of his duty as soliciting agent to ascertain in whose name a policy should be issued and how it should be issued; the evidence also shows that appellant company knew of respondent's purchase and interest in and possession of the property, and was fully acquainted with all the circumstances, and was willing to and did insure the risk in the amount of $3,000, and they have received and still retain the full amount of premium on insurance in that sum. Having undertaken to perform Pool's agreement and received the consideration therefor, they must perform it all. They cannot take advantage of the default or negligence of their agent Pool, and by failing to name respondent in the policy save one-third of the amount which appellant with full knowledge of all the circumstances agreed to pay in the event of destruction of the property. See Pfiester v. Missouri, etc., Insurance Co., 85 Kan. 97, 116 P. 245.

There is no reversible error in the record, and the judgment and order appealed from should be affirmed.

GATES, P. J., concurs in the foregoing dissent.