JAMES F. HULEN v. THE NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD, CONNECTICUT.

No. 15,975.

SYLLABUS BY THE COURT.

1. FIRE-INSURANCE—*Concurrent*—*Waiver by Agent of Insurer's
Consent.* A local agent of an insurance company, with au-
tority to issue policies and consummate the contract, who is.
informed at the time a policy is issued that there is a certain
amount of other insurance to be carried on the property, and
issues the policy without indorsing the consent of the com-
pany thereto, waives the condition in a standard-form policy
requiring the fact of concurrent insurance to be indorsed
thereon.

2. —— *Removal of Goods*—*Increased Premium*—*Waiver by
Agent.* A policy of insurance covering a stock of merchan-
dise contained the usual condition that it should be in force
only while the property was located at a certain place. The
stock was afterward removed to another location, where the
rate of premium was higher. The company was duly notified
of the removal, with the request that the policy be canceled
and the unearned premium returned. It replied by letter
suggesting that the insured see the local agent of the com-
pany and have the policy transferred to the new location.
The insured thereupon saw the local agent, who orally agreed
to a transfer of the policy. The company retained the un-
earned premium. *Held,* that the company was bound by the
act of its agent, and that the failure of the company or its.
agent to notify the insured of the increased rate of premium
and demand payment therefor was a waiver of the higher
rate.

Error from Labette district court; ELMER C. CLARK,
judge. Opinion filed May 8, 1909. Reversed.

STATEMENT.

THIS is an action on an insurance policy covering a
stock of merchandise at Mound Valley. The answer
sets up a number of defenses, substantially as follow:
The property was insured only when located in a cer-
tain building, as described, on lot 12, and after the
issuance of the policy the plaintiff removed his stock

of goods to a building situated on lot 10, where the rate of fire-insurance was higher. The policy contained a provision that it might be canceled at any time at the request of the insured, or by the company, by giving five days' notice thereof, and if canceled, as provided, the unearned portion of the premium should be returned on surrender of the policy, the company retaining the customary short rate. On September 12, 1906, after plaintiff had removed his stock of goods to the new location, he wrote the insurance company a letter, as follows:

"I write you in regard to our insurance. Your agent has been out of town for some time and we have moved our stock of goods during the time he has been gone. Here we renewed our policy May 8-06 and have been without protection for eight days. What we want is our policy canceled and money refunded for unexpired time, which is eight months and three days. We having moved the 5th of September. Please see to this.
Respect.,     HULEN & Co."

Upon the receipt of this letter the defendant wrote the plaintiff as follows:

"*Messrs. Hulen & Co., Mound Valley, Kan.:*
"GENTLEMEN—Your communication of the 12th addressed to the Hartford office concerning policy No. 902,969 has been referred to this department for attention. We are not in a position to forward you a check for the short rate premium as the canceled policy was not enclosed in your letter. Possibly agent Bottorff has returned ere this, and, if so, it will be in order to present the policy to him for cancelation, and if the insurance is still desired he, no doubt, will be glad to transfer same to cover at the new location. We are also referring the matter to our special agents, Theo. & W. L. Gardner, Lawrence, Kan., for investigation and attention.     Yours truly,
FRED S. JAMES, *General Agent.*"

It was alleged in the answer that the defendant was at all times ready and willing to return to plaintiff the unearned premium at short rate, as provided, on the surrender of the policy, or it was willing, on the pre-

sentation of the policy and a request of plaintiff, and upon payment by him of the additional premium required, to transfer the policy to the new location; but that the plaintiff never surrendered the policy to the defendant or its agent and requested a transfer to be granted, and never, at any time, paid or offered to pay the additional premium necessary, and by reason thereof the policy was not in force at the time of the fire.

In the reply it was alleged that in the latter part of September, 1906, when J. F. Bottorff, agent of defendant, had returned to Mound Valley after an absence of several weeks, he stated to plaintiff that the policy in question was effective and in full force on the stock at its new location, and that it would not be necessary for the transfer thereof to be indorsed upon the policy in writing in order to make it effective; that as agent of the company he waived the transfer of the stock of merchandise from lot 12 to lot 10, and also waived an indorsement in writing upon the policy permitting the transfer to the new location; and that the defendant never mentioned, or made any claim to the plaintiff for, an additional premium to cover the stock of merchandise at its new location, and thereby waived the payment of any additional rate.

The policy in question was dated May 8, 1906. It was of standard form, and provided that it should be void if the insured then had or should thereafter make or procure any other insurance upon the property unless otherwise provided by agreement indorsed on the policy or added thereto. It is admitted that on May 12, 1906, four days after the policy was issued, the plaintiff procured a policy in the Shawnee Fire Insurance Company for $2500, covering the same property, and that no agreement or consent thereto was indorsed on the policy sued on.

The case was tried to the court on an agreed statement of facts, supplemented by oral testimony on the part of the plaintiff. On the trial the plaintiff testified

that he had carried policies in the defendant company on his stock for six or seven years, the business being transacted with the local agent, J. F. Bottorff; that at the time the policy was issued he informed Bottorff that he was carrying $7700 insurance on the property, and that when Bottorff asked him what companies were carrying it he told him he did not know—that he would have to go and see the other agents, Wadsworth and McCoyd. This was at the time he was writing the policy at the store. It required the 2500-dollar policy in the Shawnee company to make up the $7700 concurrent insurance.

The plaintiff further testified that after receiving the letter from the insurance company directing him to see their local agent, and after Bottorff had returned to town, he met him at the post-office and had the following conversation with him:

"I said to him, 'What are you going to do about my policy?' And he said, 'What policy?' And I said, 'On my goods; the other boys have put written transfers on, and I want you to do the same.' He said, 'It don't need any transfer slip, but if it will satisfy you any better, I will drop in some day soon and put it on for you.' . . . He asked me if I had any more insurance on the goods, and I told him that I did n't—that I had the same $7700 concurrent insurance. He said that was all right."

Plaintiff said Bottorff never brought or attached any written transfer to the policy; that the conversation at the post-office was held immediately after he received the letter from the company referring him to the local agent; that he was not aware that the rate of premium was higher at the new location until sometime in October, when he learned the fact from other agents; and that no demand had ever been made upon him by the defendant for any additional or higher rate of premium.

It is agreed that on the 27th day of February, 1907, fire damaged and destroyed a large portion of the

Hulen v. Insurance Co.

stock of plaintiff, and if he is entitled to recover in this action the amount of his recovery should be $1453.65 and costs.

At the conclusion of the testimony the court sustained a demurrer to the plaintiff's evidence and found for the defendant, giving judgment in its favor for costs. Plaintiff brings these proceedings to review the judgment.

*W. D. Atkinson*, for the plaintiff in error.

*A. D. Neale*, and *Fyke & Snider*, for the defendant in error.

The opinion of the court was delivered by

PORTER, J.: The defendant insists that the failure of the plaintiff to have the additional insurance indorsed on the policy precludes his right to recover, and in the same connection the contention is made that the local agent was powerless to waive the conditions of the policy in respect of a change in the location of property and non-payment of the higher rate of premium, for the reason that he had no knowledge of the additional insurance at the time of the alleged waiver.

We regard it as of no importance that the policy for the additional insurance was dated four days later than the policy sued on, if, in fact, the agent at the time he wrote the policy was informed that there would be $7700 concurrent insurance, and if it appears that it required the 2500-dollar policy to make up this amount of concurrent insurance. In the ordinary course of business it would be nothing unusual that the policies on a stock which had been insured for six or seven years bore different dates and expired at different times. It may be that the policy in the Shawnee company was a renewal of a similar policy in actual existence on May 8. The question is, Did the company have, through its agent, notice of this concurrent insurance? The case

was decided on a demurrer to the evidence. The testimony of the plaintiff stands admitted, to the effect that he informed the agent that the amount of concurrent insurance would be $7700 and directed him to other local agents for further information; also that at the time the local agent agreed to the transfer of the policy he asked plaintiff how much concurrent insurance was then on the stock, and was informed that the amount was the same.

"A general agent of an insurance company can modify the insurance contract or waive a condition of a written policy by parol." (*Insurance Co. v. Gray*, 43 Kan. 497, syllabus.)

(See, also, *Am. Cent. Ins. Co. v. McLanathan*, 11 Kan. 533; *Insurance Co. v. Hogue*, 41 Kan. 524; *Insurance Co. v. Munger*, 49 Kan. 178; *Insurance Co. v. Bank of Pleasanton*, 50 Kan. 449; *Insurance Co. v. McCarthy*, 69 Kan. 555; *Insurance Co. v. Straughan*, 70 Kan. 186; *Cooper v. German-American Insurance Co.*, 96 Minn. 81.) The local agent was the general agent of the company within the scope of the foregoing decisions. (*Insurance Co. v. Gray, supra.*) We think that beyond any question the agreement of the agent that the policy should be transferred to cover the goods at the new location operated as a waiver of the condition that it should be in force only while the property was located on lot 12, and also operated as a waiver of the condition with respect of concurrent insurance, because he had knowledge of the facts.

It is argued that because the policy was canceled by the removal of the property it could no longer bind the company unless it was reinstated, and the contention is made that there was no consideration for an agreement to reinstate. It is not difficult to discover the consideration. After the plaintiff removed his stock he wrote the company and requested that the policy be canceled and the unearned premium returned to him. The company, evidently desirous of retaining in its

possession the unearned premium, replied by letter and gave him a very cordial invitation to see the local agent and have his policy transferred to cover the property at the new location. He accepted the invitation, they retained the money, and are not in a position to say that there was no consideration for the agreement to reinstate.

In regard to the failure of the plaintiff to pay the higher rate of premium, it is sufficient to say that there was no obligation on his part to pay it until it was demanded by the company. In the letter in which the company suggested that he see the local agent nothing was said about a higher rate, and when the local agent talked with the plaintiff and consented that the policy should be considered as transferred to the new location there was no request for any additional or higher rate of premium. A case very similar in the facts is *Cooper v. German-American Insurance Co.*, 96 Minn. 81. It was there said:

"The duly authorized agent of a fire-insurance company, having power to consent to the removal of the location of insured property and to transfer the policy, may by oral agreement consent to such removal and make such transfer, and if such agreement is made the policy does not become void but continues in force. The fact that the rate of insurance is greater at the new location does not relieve the obligations of the company under the policy, provided the insured agrees and holds himself in readiness to pay the additional premium. The duty is upon the agent to ascertain what the increased rate is and make demand upon the insured therefor." (Syllabus.)

It follows from what is here said that it was error to sustain the demurrer, and the judgment is reversed and the cause remanded for further proceedings.