No. 21,065.

THE MCPHERSON MERCANTILE COMPANY, *Appellee*, v. THE RELIANCE INSURANCE COMPANY OF PHILADELPHIA and THE AGRICULTURAL INSURANCE COMPANY, *Appellants*.

SYLLABUS BY THE COURT.

1. INSURANCE POLICY—*Mistake in Amount of "Concurrent Insurance" Permitted—Reformation of Policy.* When the agent of the insurer issuing a policy containing the standard clause against concurrent insurance, unless by agreement added or indorsed, knows that the insured has and will desire to carry other insurance on the property and instead of agreeing with him as to a limit such agent without the knowledge or consent of the insured attaches a slip fixing a limit, the policy should be construed and if necessary deemed reformed so as to provide generally for additional concurrent insurance.

2. SAME. A policy containing, or deemed reformed so as to contain, such general clause precludes the defense that subsequent insurance was taken out without notification to the insurer, such general clause importing until withdrawn a continuing consent to additional concurrent insurance.

Appeal from McPherson district court; FRANK F. PRIGG, judge. Opinion filed October 6, 1917. Affirmed.

*L. C. Boyle, George L. Boyle,* and *William F. Woodruff,* all of Kansas City, Mo., for the appellants.

*P. J. Galle,* of McPherson, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff brought these actions (which have been consolidated) to recover on two insurance policies on account of the loss of its stock of merchandise. There were sixteen policies in all, the claims under the others having been adjusted. Each contained the standard clause against concurrent insurance without agreement indorsed or added. Each also contained the following indorsement: "$30,000 total concurrent insurance permitted." It was shown that when the two policies were issued, which was in March and April, 1914, respectively, there was in the neighborhood of $11,000 insurance on the property, and that when the loss occurred the total was $34,500. The original petitions contained an allegation that there was a mistake with reference to the concurrent insurance permitted, that the agreement and understanding was that there should be written "additional concurrent insurance permitted." After the close of all the evidence the plaintiff was given ten days to file amended petitions to conform to the proof and therein alleged that the agreement and understanding was that there should be written in the policy "additional concurrent insurance permitted," or words of similar import or meaning. That the Reliance agent was told that the plaintiff would desire more insurance and assented thereto and procured an old policy from the plaintiff's cashier without the knowledge of its president and general manager and wrote in the policy sued on, without any authority, the $30,000 limit. In the case against the Agricultural company the amended petition alleged a mutual mistake and that the policy was a renewal of old insurance written by the father of the agent, who wrote the policy sued on, and was written without the knowledge of the plaintiff's president and general manager and that the agent copied from the insurance record in his office and wrote in the

policy "$30,000 total concurrent insurance permitted," on his own motion without authority, all unknown to the president and general manager until after the fire. It was alleged that the agent of each company was in possession of all the facts with reference to the concurrent insurance or by the exercise of reasonable diligence should have known the amount thereof before he wrote the policy, and that by reason of their acts the companies waived the provision in the policies touching concurrent insurance. Judgment was rendered for the proportional amount due on each of the policies, and the insurance companies appeal.

As to the policy in the Reliance company the president and general manager, Mr. Scott, testified that he told the agent he could write him for $2000 insurance.

"He wanted to know if I carried other insurance and I told him I did, I carried other concurrent insurance.

"Q. Was that all you said to him? A. That is practically all I said to him. He asked me if he could have the policy to get the form, and I told him to go to the office and get a policy, which he did."

In the Agricultural case the plaintiff in its brief says that the agent did not inquire of Mr. Scott how much, if any, concurrent insurance he desired and that it was the agent's business to ascertain the amount carried or place no limitation instead of writing on his own motion a limit of $30,000. There is no evidence of any notice to the defendants of any concurrent insurance subsequently taken out, and it seems that the $30,000 limit was placed in each policy because the agent in each case found that this amount had been inserted in some previous policy.

The conversation with the agent in the Reliance case and the fact that the agent in the Agricultural case inserted the $30,000 limit indicate that each knew and understood that some amount of concurrent insurance was intended by the insured to be carried, but there is no evidence or claim that any specific amount was mentioned or agreed upon.

The defendants rely on *Assurance Co. v. Norwood,* 57 Kan. 610, 47 Pac. 529, in which case the express limit was $32,500, but the amount carried was $40,000 and the plaintiff sought to hold the company estopped because he advised the agent at the time the policy was issued that he intended to carry $40,000 total insurance. It was held that to permit the plain-

tiff to prove this would be to vary the terms of the policy itself by parol testimony, which could not be done.

"It can not be said then, that, at the time the policy was issued, either the Company or its agent, Ormandy, had notice of the existence of so much insurance as would avoid the policy; nor can it be said that at any subsequent time, Ormandy knew that the condition of the policy had been violated, and received or even retained the premium paid on it. There is, therefore, no element of estoppel in the case." (p. 617.)

It had already been pointed out that no information was given the company or its agent at any time before the fire of the full amount of insurance taken out.

Numerous recent decisions hold insurance companies responsible when their agents wrongfully or without authority write something into a policy or application which the insured did not authorize. (*Continental Ins. Co. v. Pearce,* 39 Kan. 396, 18 Pac. 291; *Insurance Co. v. Gray,* 44 Kan. 731, 25 Pac. 197). In *Hulen v. Insurance Co.,* 80 Kan. 127, 102 Pac. 52, the agent was told that a certain amount of other insurance was to be carried on the property but issued the policy without indorsing the consent of the company thereon and it was held that the condition in the concurrent clause like that in the policies under consideration was thereby waived by the company. In *Pfiester v. Insurance Co.,* 85 Kan. 97, 116 Pac. 245, it was decided that an applicant for insurance without knowledge to the contrary may assume that the application and the policy have been written according to agreement although he fails to examine such instruments for errors and omissions, and that when such agreement has been departed from by the agent the beneficiary after the death of the insured may have the contract reformed according thereto. In *Cue v. Insurance Co.,* 89 Kan. 90, 130 Pac. 664, it was held that where a soliciting agent who inspects a risk and takes a written application for insurance upon which a policy is issued knows that gasoline is being used upon the premises, the company is bound by such knowledge and will be presumed to have waived a condition in the policy forbidding such use. In *Palin v. Insurance Co.,* 92 Kan. 401, 140 Pac. 886, the doctrine of *Pfiester v. Insurance Co.,* 85 Kan. 97, 116 Pac. 245, was applied to an action to reform a fire-insurance policy to include permission to take out additional insurance according to oral negotiations between the

plaintiff and agent of the defendant.   In the opinion an in-
struction to the effect that—

"If it was the understanding of the plaintiff and the agent who took
the application that the policy would permit the plaintiff to take out addi-
tional insurance, the policy was not avoided although it did not include a
provision of that kind and additional insurance were taken out" (p. 403)

was approved.   In *Commercial Assurance Co. v. New Jersey
Rubber Co.*, 61 N. J. Eq. 446, a rider annexed to the policy
stated that other concurrent insurance was permitted without
notice until requested.   It was held that this was not infringed
by insurance that covered only some of the items, provided
such other insurance was effected on terms which required it
to bear proportionally with the primary insurance whatever
loss occurred within the range of their common operation.   In
*W.-H. Coffee Co. v. M. Fire Ins. Co.*, 110 Iowa 423, concurrent
insurance was held to mean any insurance running with that
of the defendant insurer and sharing its risk and to include
policies covering not only a part of defendant's risk but all of
it and more.   In the opinion it was said:

"Here the clause 'other concurrent insurance permitted' did no more
than wipe out the prohibition of the policy.   The hazard of excessive in-
surance was entirely waived, and, in so far as the risk was concerned, it
was immaterial whether the additional insurance was on one or all the
items covered by the defendant's contract." (p. 431.)

In a note, 49 L. R. A., n. s., page 374, it is stated that when
the provision for concurrent insurance is ambiguous it must be
construed most strongly against the insurer.   In *Philadelphia
Underwriters Insurance Co. v. Bigelow*, 48 Fla. 105, the slip
attached to the policy reading "$—— total concurrent insur-
ance permitted" was held not to give permission for any addi-
tional insurance.   But in *Medley v. Insurance Co.*, 55 W. Va.
342, the slip attached read "$—— other concurrent insurance
permitted" (p. 369), and it was held that it would not be pre-
sumed that because the amount was left blank the slip was
left on inadvertently, and that the policy was not to be avoided
because other insurance was taken out on the property.   Joyce,
in his work on insurance, in speaking of the modern tendency
of the courts to hold that provisions as to notice and consent
for other insurance may be waived by the company and in
many instances by its agents, says:

"But in order to establish a waiver of a condition against additional
insurance, it must appear that the subject matter of the waiver and con-

sent was in the minds of the parties, and that it was consciously and purposely done by the minds of the parties coming together upon the proposition. The fact that the company has actual knowledge of other insurance at the time of issuing the policy, though no formal notice has been given, will prevent it from setting up additional insurance to defeat a recovery." (3 Joyce on Insurance, § 2487.)

Ostrander on Fire Insurance, second edition, section 248, reads:

"It is a common practice to indorse policies, 'Other concurrent insurance permitted.' . . . The contract, before any privileges are added, imports an absolute prohibition of other insurance. By the indorsement referred to, the rigor of the prohibitory clause is softened and modified, but not to the extent of permitting 'other insurance' without qualification. It is something less that is granted, something of equal value to the insured, and at the same time something that the insurer nominates and insists upon as a condition on which it consents to become a co-insurer with other companies. This it may do as a right, and, when done, it becomes a part of the contract. It is substituted for the original provision, by which all other insurance was interdicted."

Ostrander also lays down the rule that—

"When the agent who negotiates the insurance has knowledge of other policies on the risk, the insurer will be forbidden to invoke a forfeiture on account of such prior insurance, although, in contravention of the terms of the policy, there has been a failure to indorse thereon his consent. While the insurer will generally be bound by his knowledge of facts existing when the policy issues, it is not his duty to take notice of subsequent changes, unless brought to his attention in the manner prescribed in the policy." (§ 253.)

This would doubtless be true if the policy contained nothing to modify the usual clause against concurrent insurance, but when the company or the agent issuing the policy knows that the insured has and will desire to have concurrent insurance and no limit is mentioned or agreed upon and a general clause permitting concurrent insurance is by the agent inserted in the policy the fair construction of such clause is that such concurrent insurance as the insured may desire will be permitted. The insurance company, knowing the general nature of the risk and the amount of concurrent insurance existing, may be willing for an additional amount to be taken out, but if it desire to place a limit it should do so. And its voluntary act in leaving the matter open must be construed as a continuing consent to additional insurance until such consent is withdrawn. In other words, the matter is all in the hands of the insurer to

limit the matter of concurrent insurance as may be desired or to leave it without limit. Having chosen the latter course and issued the policy it must be held bound thereby. See Note, 16 L. R. A., n. s., 1238.

In these cases the policies were for $2000 and $1000, respectively, and by reason of proportional liability the amounts are reduced to $623.20 and $311.60, respectively.

It sufficiently appears that the insured and each agent mutually understood that concurrent insurance was desired and was to be permitted, no amount or limit being fixed. About the only way this mutual understanding could be expressed was by a general clause to that effect. And under all the circumstances it is held that the reformation prayed for should be considered as made. This places the defendants in the position of issuing and leaving their policies in force with this general consent to concurrent insurance, and they are held liable accordingly.

The judgments are affirmed.

PORTER, J., dissents.