THE GERMAN AMERICAN INSURANCE COMPANY OF NEW YORK V. C. M. DARRIN.

No. 16,119.

SYLLABUS BY THE COURT.

1. FIRE-INSURANCE—*Application—Policy.* It is the duty of a fire-insurance company which accepts a signed application for insurance, written on a blank furnished by the company which provides that it shall be the basis on which insurance is to be effected, to write the policy in accordance with the application.

2. ——— *Iron-safe Clause—Application—Policy.* If in such an application the applicant state that he will agree carefully to preserve his last inventory in an iron safe at night or in some place secure against fire in another building, the company is authorized to insert an iron-safe clause in the policy extending to the last inventory only, and not also to books of account.

3. ——— *Insured May Assume Policy Follows Application.* The recipient of a policy issued in response to an application of the character described may assume that the company has discharged its duty and has written the policy on the basis of the application, and he is not obliged to read the policy to see if it conforms to the application.

4. ——— *Contract—Evidence.* If such an application be received and retained by the company, a policy be written and delivered, and the premium be paid by the applicant and kept by the company, a binding contract of insurance is effected on the basis of the application.

5. ——— *Reformation of Policy.* If through inadvertence, mistake or design such a policy be written on a basis different from that contained in the application, it may be reformed to correspond with the application.

Error from Linn district court; WALTER L. SIMONS, judge. Opinion filed July 3, 1909. Affirmed.

*Fyke & Snyder,* for the plaintiff in error.
*Noah L. Bowman,* for the defendant in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiff, who lives at Farlinville, desiring to insure his stock of merchandise against loss by fire, had a conversation on the subject by telephone with the defendant's agent, who lives at Mound City. As a result, on the next day the agent sent to the plaintiff by messenger a written application for insurance, which was duly filled out, signed and returned, and a policy was issued insuring the property for one year from the 11th day of October, 1905, at noon. On November 17 following the property was destroyed by fire. On November 18 the plaintiff called upon the agent, paid the premium, and took with him the policy, which had remained at the agent's office. Later the defendant's adjuster called for the plaintiff's last inventory and books of account. The books of account could not be produced because they had not been kept in an iron safe or in another building secure from fire, and had been burned. The inventory had been securely preserved in another building, and consequently was duly exhibited. The defendant kept the premium, but denied liability on account of the breach of a condition contained in a rider attached to the policy, the essential portions of which read as follow:

"It is expressly stipulated that the assured shall take an inventory of the stock hereby covered at least once a year during the life of this policy, and shall keep books of accounts correctly detailing purchases and sales of said stock, and shall keep said inventory and books securely locked in an iron safe, or in some place secure against fire in another building during the hours said store is closed for business, and in case of loss the assured agrees and covenants to produce such books and inventory, and in the event of failure to produce the same on demand this policy shall be null and void, and no suit or action at law shall be maintained thereon for such loss. . . . Reference being herein had to original application on file, signed by the assured, which is hereby made a part of this policy and a war--

ranty on the part of the assured.     Attached to and forming part of policy No. 592 of the German American Insurance Company of New York."

The material parts of the application thus made a part of the policy read as follow: ·

"(1)  INVENTORY OF STOCK:  (*a*)  Do you take an itemized inventory annually?   Yes.  (*b*)   When was your last inventory taken?   September 20, 1904.   (*c*) Amount of last inventory, exclusive of book accounts or personal property not kept in stock for sale (give dollars and cents)?   About $1680.00.  (*d*) Is your stock uniformly inventoried at cost prices, as shown by your bills of purchase?   Yes.  (*e*)   Will you agree to carefully preserve the last inventory in an iron safe at night, or in some place secure against fire in another building?   Yes.

"(2)  BOOKS OF ACCOUNT:  (*a*)  Do you keep a systematic set of books?   Yes.  (*b*)   Do they show your daily sales for cash and for credit?   Yes.  (*c*)   What are your average annual sales for cash?   $5000; for credit, $1000.

"(3)  HISTORICAL:  (*a*)  Did you start with a new stock bought from jobbers direct?   No.  (*b*)  If not, from whom was your original stock bought, and when? From D. D. Patterson, September 20, 1904.  (*c*)  What was the amount of the consideration?   $1468.  (*d*) Was the consideration in cash or trade? ˙(State particulars.)   Cash.

"And the said applicant hereby covenants and agrees to and with the said German American Insurance Company that the foregoing is a just, true and full exposition and statement concerning the property to be insured, being the basis on which insurance is to be effected, and a continuing warranty on the part of the applicant."

The plaintiff did not see the policy until after the fire, and did not know of the condition relating to preservation of books of account until the adjustment. In an action on the policy the "iron-safe clause" of the rider was reformed to correspond with the application and the plaintiff recovered.   The defendant prosecutes error.

The iron-safe clause in a fire-insurance policy is usually held to be a promissory warranty which must be strictly performed. (19 Cyc. 761.) This court has decided that it is valid and that compliance with it is a condition precedent to recovery in case of loss. (*Insurance Co. v. Knerr*, 72 Kan. 385.) The clause, however, relates to a collateral matter wholly outside the contract of indemnity. It is the product of the insurer's ingenuity, who formulates its terms and chooses the method of bringing it into the contract. It is imposed upon the insured without consideration moving to him, is inserted for the special benefit of the insurer, and works a forfeiture in case of non-compliance with it. Whenever, therefore, it becomes the subject of judicial consideration it will be treated according to the well-known disposition of the courts to make the main contract prevail, and no zeal will be displayed to aid an attempt to inject the clause into a policy or to prefer a stronger over a weaker one.

The application was the plaintiff's proposal for insurance, subject to acceptance or rejection by the defendant, and its function was to state definitely the terms of the contemplated contract so far as they were specified. The application itself expressly provided that it was the basis on which the insurance was to be effected. In the application the defendant required the plaintiff to commit himself in advance respecting the subject which the iron-safe clause embraces, and presumably covered the whole matter to its entire satisfaction. The object was, of course, to be in a position to decline the risk if the plaintiff did not answer the question propounded to him to the defendant's liking, and if he did to make his answer the basis of a promissory warranty in the policy. By his answer and the terms of the application the plaintiff did clearly authorize an iron-safe clause extending to the last inventory to be inserted in the policy, but he did not authorize one extending also to books of account. The

defendant could not change this basis of contract, substitute another in its stead, and thereby bind the plaintiff, without his knowledge or assent. As to all terms and conditions not made the subject of previous stipulation the plaintiff had the right to assume, and was bound to know, that the policy would be in the usual form issued by the defendant. But when the defendant had insisted upon an understanding with him in advance upon the subject-matter of an iron-safe clause he had the right to take it for granted that the policy if issued would be written on the stated basis, and it was the plain duty of the defendant so to write it or to reject the application in its offered form.

"The applicant for insurance has a right to rely upon the assumption that his policy will be in accordance with his oral application, and, if the insurer desires to make the policy in anything different, it must, in order to make it binding upon the assured, call his attention to the clauses differing from the application." (*Gristock v. Insurance Co.*, 87 Mich. 428, syllabus.)

For the same reason it is of no consequence that the plaintiff did not read his policy when it was delivered to him and promptly object to its terms.

"An insured has the right to rely on the presumption that the policy he receives is in accordance with his application, and his failure to read it will not relieve the insurer or its agent from the duty of so writing it." (*M'Elroy v. British America Assur. Co.*, 36 C. C. A. 615, syllabus.)

There is no question here of the merger of preliminary negotiations in the final contract or of conflict between the application and the policy. It is a question of making an evidentiary document correspond to the agreed written basis of contract. Neither is there any doubt of the existence of a contract. The application was received and retained, the policy was written and delivered, and the premium was paid and kept. Through inadvertence, mistake or design—no matter which—the iron-safe clause was expanded in the rider

Railroad Co. v. Thisler.

to. the policy beyond the limits fixed for it by the application, and the plaintiff, who neither authorized nor assented to the change, was entitled to have it reformed. He complied with the condition which he undertook to perform and could not be defeated on account of non-compliance with another which he did not undertake to perform.

Other questions discussed in the briefs have been examined, and nothing sufficiently serious to warrant a reversal appears. The judgment of the district court is affirmed.