ADAM PFIESTER, *Appellee,* v. THE MISSOURI STATE LIFE
INSURANCE COMPANY, *Appellant.*

No. 17,116.

SYLLABUS BY THE COURT.

1. LIFE INSURANCE—*Solicitor Is Agent of Company, Not of As-
sured.* An agent for a life insurance company whose au-
thority is limited to negotiating for, taking and transmitting
applications for the approval or rejection of the company is
the agent of the company and not of a person whom he solicits
to take insurance, and for those purposes he has all the power
the company itself possesses.

2. ――――― *Company Bound by Agreements of Agent.* Agree-
ments made between such an agent and a person whom he so-
licits to take insurance as to what the application shall con-
tain are in legal effect made with the company and bind it as
to the contents of the application.

3. ――――― *Duty of Agent to Properly Prepare Application—Com-
pany Bound by Acts of Agent.* It is the duty of such an agent
to prepare the application of a person solicited to insure so
that it will accurately and truthfully state the result of the
negotiations, and the agent's failure to do so is in legal
effect the fault of the company.

4. ――――― *Knowledge of Agent Knowledge of Company.* If
such an agent fail to write into the application an agreement
which he has made with the applicant respecting the terms of
the insurance desired his knowledge of the agreement is in
legal effect the knowledge of the company.

5. ――――― *Acceptance and Retention of Initial Premium—Issu-
ance of Policy—Binding Contract.* If in the case stated in
paragraph 4 the company accept and approve the application,
receive and retain the initial premium and issue the policy, a
binding contract of insurance is effected according to the
agreement.

6. ――――― *Reformation of Policy — Parol Evidence — Varying
Terms of Contract.* In the case just stated the company can
not, in an action brought for the purpose, successfully oppose
the right of the insured, or of the beneficiary after the death
of the insured, to have the contract reformed according to the
agreement, notwithstanding a provision in the application that
statements not in writing shall not bind the company, and
notwithstanding a provision in the application that the con-

7—85 KAN.

tract formed by the application and policy taken together can be varied only by the president or secretary of the company in writing.

7. ——— *Failure of Insured to Examine Application and Policy Not Negligence.* An applicant for insurance without knowledge to the contrary may assume that the agent has prepared the application according to agreement and that the company has written the policy according to the application and he is not negligent in failing to examine such instruments for errors and omissions.

Appeal from Harvey district court. Opinion filed June 10, 1911. Affirmed.

*James C. Jones, Charles Blood Smith,* and *Samuel Barnum,* for the appellant; *Jones, Jones, Hocker & Davis,* and *John C. Nicholson,* of counsel.

*Cyrus S. Bowman,* and *Harry C. Bowman,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The defendant issued a policy of insurance on the life of Jacob Pfiester, payable to the plaintiff, Adam Pfiester. The application was taken on June 14, 1907, by an agent whose written authority was limited to negotiating for applications, transmitting applications to the defendant for approval or rejection and collecting the initial premium. The application was signed by the insured and asked that the policy be dated May 5. It provided that no statements or answers made to or received by any person or to the company should be binding on the company unless such statements or answers were reduced to writing and made a part of the application. It also provided that the application and policy when issued should constitute the entire contract, which could be varied only by the president or secretary of the company in writing. It further provided as follows:

"That the insurance hereby applied for shall not take effect unless the premium is paid and the policy deliv-

ered to and accepted by me during my lifetime and good health, and that then the first insurance or policy year shall end on the first anniversary of the date of this application, or, in any event, on such date as may be fixed by the company in the policy."

The premium for the first policy year was paid when the application was taken. The policy which was issued was dated June 26, 1907. It fixed the first policy year as ending on May 4, 1908, and provided that it would be continued in force on the payment of the annual premium on the 4th day of May in each year, with a grace period of thirty days after the due date. When the application was taken it was agreed between the defendant's agent and the insured that annual premiums should be paid on June 14, the anniversary of the application, with a grace period of thirty days following the due date. Through the agent's oversight or fault the agreement was not inserted in the application or otherwise submitted to the defendant. The premium for 1908 was paid on June 12. The insured died on June 19, and the policy was found among his effects. The defendant denied liability because the premium for 1908 was not paid within thirty days after May 4. The beneficiary as plaintiff brought an action to reform the policy according to the agreement and to recover upon the policy as reformed.

The plaintiff gave the following account of the negotiations with the defendant's agent:

"He went ahead then and told us about what a good company it was and all, and led us up to the present time and told us about the standing of the company that he represented and tried to persuade my brother to take out insurance. . . . He told about the company and then wanted to insure, and then my brother said that he could not take this policy out, and he asked me if I would not take it out for my brother, and we went ahead and talked and I says to him, 'I am not in any shape to take this out, unless you make this policy so I can pay it after harvest'; and he said 'All right, we can fix it.' He says, 'The company allows thirty days';

that was June 14; he says, 'They allow thirty days on their policy.' 'Well,' I says, 'if you can fix it like that, if I pay you for this policy it will be due June 14, a year?' 'Yes,' he said, 'would be due June 14th a year.' "

Under these circumstances the insurance was taken. The agent explained why the policy was dated back as follows:

"The first discussion of insurance Jacob Pfiester gave his age as thirty years, and in the course of our discussion of the insurance I of course asked him the month of his birth, and finding out the month of his birth, I saw he had passed the six-months dividing line, so-called by insurance agents; I explained to him then that we could make a request to the company to date back the policy to May 5, and give him the rate at thirty, his last birthday; and therefore that would give him a lower rate and would mature the policy that much earlier at the end of twenty years."

The agent further testified that it was customary to date policies back thirty or sixty days.

Judgment was rendered for the plaintiff and the defendant appeals.

The contention of the defendant is that the evidence of the plaintiff relating to the date upon which premiums were to become due was incompetent because it tended to contradict the written contract. The first purpose which the plaintiff sought to accomplish was the reformation of the contract. Insurance contracts are the subject of reformation the same as any other kind, and in all suits for reformation the true contract may be established by parol evidence whenever it is the result of oral negotiations. These principles are elementary. The defendant argues further, however, that since its agent's authority was limited to the taking and transmitting of applications he could not make a binding contract that premiums should fall due on June 14, that no application requesting that premiums fall due on that date was ever submitted to or approved by the defendant, and consequently that the

judgment of the court in effect makes a contract instead of reforms one.

There are two principal lines of decisions on the subject indicated, with a third inclining now toward one and now toward the other. According to one view the applicant and the insurer are treated as if the negotiations were of ordinary bargain and sale in a field where both stand on the same footing. The applicant frames and signs, upon his own judgment and at his own risk, an order or request for an article called a policy. This order is taken and transmitted by an intermediary commissioned, equipped and paid by the insurer, but the insurer may by force of mere words destroy the relation of agency between itself and the intermediary and cast all the consequences of his mistakes and misfeasances upon the applicant. Upon receipt of the order the insurer fills it by forwarding an elaborate and intricate document which the applicant takes according to the rule of *caveat emptor*. If the terms of the policy do not correspond to the application a new proposition is tendered, which the applicant must detect, scrutinize and reject, or forever hold his peace. At every step the applicant is held rigorously to the maxim, *vigilantibus et non dormientibus jura subveniunt*. Meanwhile the insurer has the applicant's money.

The other principal theory of the formation of the insurance contract is based upon facts. Everybody knows what the facts are. The insurance company sends out its agents for the purpose of procuring insurance. They are usually experts in the business and are frequently paid large bonuses for securing extra large volumes of insurance. Few persons solicited to take policies understand the subject of insurance or the rules of law governing the negotiations, and they have no voice in dictating the terms of what is called the contract. They are clear upon two or three points which the agent promises to protect, and for every-

thing else they must sign ready-made applications and
accept ready-made policies carefully concocted to con-
serve the interests of the company.  The agent in fact
prepares the contract when he writes the application,
because the policy, which the applicant does not see
until delivered and does not sign, follows an accept-
ance of the application as a matter of course.  In writ-
ing the application the agent does what the company
sent him out to do.  He negotiates for the company,
asks questions for the company, writes down answers
for the company, and makes the return for the com-
pany.  It is not carelessness or imprudence in fact, as
people in general understand those terms, for the ap-
plicant to take it for granted that the agent will ac-
curately and truthfully set down the result of the
negotiations.  If he fail to do so good sense and com-
mon justice regard the company as responsible and not
the insurer.  The subject, therefore, is *sui generis,* and
the rules of a legal system devised to govern the for-
mation of ordinary contracts between man and man
can not be mechanically applied to it.

It is not necessary to review the decisions in which the
foregoing conflicting views are maintained.  This court
favors the one which is least artificial and best con-
forms to the facts.

In the case of *Continental Ins. Co. v. Pearce,* 39 Kan.
396, the opinion reads:

"In taking this application for insurance, was J. A.
Beals the agent of plaintiff or of defendant?  It is
claimed that by reason of the stipulation on its face,
which provided that all statements, answers and de-
scriptions were the acts of the plaintiff, that whatever
part Beals may have taken in making and filling it out,
was as his agent.  It must be conceded that plaintiff
did not seek Beals for this work; did not even ask him
to do it, and paid him nothing therefor; did not even
suspect that at that time he was his agent, but did be-
lieve that he was an insurance agent, looking after the
interests of the company whose advantages he was ad-
vocating to plaintiff.  He was canvassing for business

Pfiester v. Insurance Co.

for the defendant; had made several trips to plaintiff's house, before he saw him, to insure it, and, against plaintiff's preference, finally induced him to insure in this company. He was supplied with its blanks, and was employed and paid by it. This application was practically the work of Beals, though the stipulation on the face thereof provides that the answers and statements were made by plaintiff, or his authority; thus attempting to make the agent of the company the agent of the assured. The ordinary instructions of companies to their agents, and their dealings with them, are too well known for us to shut our eyes to the manner in which their work is carried on. This is but a form of words to attempt to create on paper an agency, which in fact never existed. It is an attempt of the company, not to restrict the powers of its own agent, but an effort to do away with that relation altogether by mere words, and to make him in the same manner. the agent of the assured, when in fact such relation never existed. (*Insurance Co. v. Myers,* 55 Miss. 479.) We do not believe the entire nature and order of this well-established relation can be so completely subverted by this ingenious device of words. The real fact, as it existed, can not be hidden in this manner; much less can it be destroyed and something that did not in reality exist be placed in its stead. The substance is superior to the mere drapery of words with which one party wishes to bring into existence and clothe an unreal authority." (p. 401.)

In the case of *Sullivan v. Phenix Ins. Co.,* 34 Kan. 170, it was held that an insurance company can not shirk responsibility for any mistake or fraud committed by its agent during the preliminary negotiations on its behalf by stipulating that he is the agent of the assured. Such a stipulation involves a legal contradiction and is invalid.

In the case of *Insurance Co. v. Gray,* 44 Kan. 731, the first paragraph of the syllabus reads as follows:

"An agent authorized to take applications for insurance should be regarded to be acting within the scope of his authority where he fills up the blank application of insurance; and, if, by his fault or negligence, it contains a misstatement not authorized by the

instructions of the party who signed it, the wrong should be imputed to the company, and not to the assured."

In the case of *Insurance Co. v. Davis,* 59 Kan. 521, the opinion reads:

"There was proof to the effect that the agent of the company who filled out the application for the policy was informed by Davis that he already held an accident policy in the Travelers' Insurance Company, but for some reason that fact was omitted from the application. It is well settled that, where the agent of an insurance company who fills out an application for insurance is duly informed as to facts and fails to state them in the application, the actual knowledge of the agent will be held to be the knowledge of the company." (p. 526.)

In the case of *Insurance Co. v. Bank,* 60 Kan. 630, the opinion reads:

"In the case at bar the agent was bound to write the answers to the questions in the application as dictated by the insured, and the latter was not called upon to assume that a fraud was being practiced upon him, nor can he be charged with negligence in believing that the agent was acting in good faith. Although Rammelsberg might have received from the insurance company the policy with the written application attached thereto, yet he had a right to assume that the answers made by him were correctly written, and can not be chargeable with negligence for his failure to be suspicious, or for too much confidence in the good faith of the agent in carrying out his directions." (p. 637.)

In the case of *Insurance Co. v. Darrin,* 80 Kan. 578, it was held that the insured has the right to assume that the policy he receives is prepared in accordance with his application; that it is the duty of the insurer so to prepare it; and that the fact that the insured does no read the policy until after a loss has occurred will not defeat recovery.

The attitude of this court toward the subject under

consideration is further disclosed in numerous other decisions of like character.

In this case the agent had authority to negotiate, write and transmit the application. For those purposes he had all the power the company itself possessed, and agreements made with him as to what the terms of the application should be were made with the company. It was the agent's duty to frame the application according to the agreement with the plaintiff, and his neglect to do so was the neglect of the company. His knowledge of the agreement was the knowledge of his principal, and consequently for all purposes of the law the defendant knew the true terms of the application. With such knowledge it accepted and approved the application, received and retained the first year's premium and issued the policy. This made a binding contract of insurance, incorrectly evidenced, however, through the defendant's fault. True, on the face of the policy, and under the provision of the application quoted above relating to the force of statements not in writing, the defendant did not appear to be liable. But the defendant can not take advantage of its own wrong and successfully oppose the right of the plaintiff to have the agreement relating to the date when the annual premium should fall due written into the application and to have the policy reformed accordingly. On the policy reformed to state truthfully the contract actually made, the defendant is liable.

If the insured, or the plaintiff, had discovered the omission from the application and the error in the policy it would have been his duty to call them to the attention of the company and have the necessary corrections made. Delay would have indicated acquiescence, and if sufficiently prolonged might have affected the right to the equitable remedy of reformation. But there is no evidence that the mistakes were discovered until the policy had matured by the death of the insured. Meanwhile the plaintiff and the insured were

not negligent in failing to examine the application or the policy and were justified in supposing that they had been written as contemplated.

There was evidence to the effect that the agent made no agreement fixing June 14 as the date when premiums should fall due, but the district court has resolved the question of fact in favor of the plaintiff upon the evidence quoted above, which this court re-gards as sufficient.

The judgment of the district court is affirmed.