NATIONAL FIRE INS. CO. of HARTFORD v. McCOY et al.

No. 34749. Dec. 26, 1951.

*239 P. 2d 428.*

Russell B. Holloway and Crouch, Rhodes & Crowe, Oklahoma City, for plaintiff in error.

W. Custer Service and Jayne Mendenhall Montgomery, Edmond, for defendants in error.

DAVISON, J. This is an action wherein R. R. McCoy and N. F. Wynn, as plaintiffs, seek to recover, under the provisions of an insurance policy, from National Fire Insurance Co. of Hartford, as defendant, the value of an

airplane destroyed by a windstorm and the value of a radio and wing lights thereon which were stolen from said plane. The parties will be referred to as they appeared in the trial court.

On the 22nd of May, 1948, plaintiffs purchased a Cessna 140 airplane which was delivered to them in Edmond, Oklahoma, by one Charles Hughes of Oklahoma City. Mr. Hughes was a member of an insurance agency, styled Lacy-Hughes Agency. This agency was a soliciting agent for the defendant. The plaintiffs, upon purchasing the airplane, were desirous of having it insured against all loss and particularly that occurring on the ground. Consequently, on the same day, May 22, 1948, Mr. Hughes talked by telephone with the general agent of the defendant at Dallas, Tex., securing insurance coverage on the craft. There was no hangar available at Edmond for housing the plane and that question was not raised or mentioned by either party in the telephone conversation.

Some time later, and after he had severed his connection with the insurance agency, Mr. Hughes brought it to the attention of Mr. Lacy that the policy of insurance had not been issued. Pursuant to a telephone conversation with Mr. Lacy about the matter, the general agent in Dallas sent an application to be filled out by plaintiffs. This was in a letter dated August 11, 1948. Plaintiff McCoy signed the application in blank and Mr. Lacy filled in the answers to the questions one of which, with the answer given, was, "Is aircraft hangared? Yes."

A few days later, the policy herein sued upon was received by Mr. Lacy. By certain marks thereon, the rider attached to the policy and hereinafter set out was identified as having been printed in June, 1948. The policy was countersigned on August 18, 1948, but covered the year of May 22, 1948, to May 22, 1949. After receiving the policy, Mr. Lacy delivered it to the plaintiff McCoy who read and examined it.

McCoy offered it to the plaintiff, Wynn, who did not examine it. A rider was attached to the policy which provided that:

"Is is Hereby Understood and Agreed That:

"This policy does not cover any loss or damage caused by or resulting from tornado, cyclone, windstorm, hail, sleet or snow while the aircraft is parked and unhangared except for reasonable parking between flights or when away from        Edmond Field        located at Name of Home Airport
EDMOND, OKLAHOMA City and State

"This endorsement is effective: May 22, 1948

"All other terms and conditions remain unchanged."

On the evening of May 20, 1949, the plane was not hangared but was moored on the landing field at Edmond when it was destroyed by a windstorm. Sometime during the following two days, the radio and wing lights were stolen from it. Plaintiffs filed suit on the policy of insurance, seeking to recover upon two counts, viz., the first cause of action was for $1,318.22 for damage caused by the windstorm; the second cause of action was for $281.78 for loss sustained from the theft of radio and lights.

For defense to the first cause of action, defendant pleaded the provisions contained in the rider attached to said policy and specifically set out above, alleging that said airplane was not hangared when damaged. As to the second cause of action contained in the petition, defendant admitted liability but tendered a replacement of the parts stolen, in line with the provisions of said policy. In reply, plaintiffs denied defendant's right to replace, because of a total loss of the plane. A trial of the cause to a jury resulted in a verdict and judgment for plaintiffs for the amount sued for in both causes of action. Defendant brings the same here on appeal from said judgment.

Defendant contends that the trial court erred in permitting the plaintiffs to introduce, over objection and exception, parol evidence in support of their allegation of a mutual mistake of the parties, by reason of which they sought a reformation of the policy to the extent of eliminating the provisions contained in the above mentioned rider. With this contention, we agree. The striking down of the conclusive character of a written contract is a serious problem and this court has always been reluctant to do so unless the proof of mutual mistake was of a very satisfactory nature and free from doubt. The following holding found in the case of Eason Oil Co. et al. v. Whiteside, 175 Okla. 254, 52 P. 2d 35, is applicable to such situations:

"Where parties enter into a solemn agreement and reduce that agreement to writing, that agreement, in the absence of fraud, overreaching, or mutual mistake, must be upheld, and to justify a change in the written contract of the parties, on the ground of mutual mistake, proof is required that the written instrument does not express the real contract, and that the error, if any, was occasioned through a mistake that was mutual and the evidence must be clear, satisfactory, free from doubt, and show that the party who seeks reformation was himself free from neglect in the making of the agreement."

Following that rule and placing the burden of neglect on the party responsible for it in cases involving insurance contracts, is the principle first expressed by the Territorial Court in the case of Liverpool & London & Globe Ins. Co. v. T. M. Richardson Lumber Co., 11 Okla. 579, 69 P. 936, and reaffirmed by this court in the case of Badgett v. Oklahoma Life Ins. Co., 176 Okla. 86, 54 P. 2d 1059, as follows:

"An applicant for insurance, who accepts a policy the provisions of which are plain, clear, and free from all ambiguity, is chargeable with knowledge of its terms and legal effect. It is the duty of the assured to read and know the contents of the policy before he accepts it, and where he fails or neglects to do so he is estopped from denying knowledge of its terms and conditions, unless he alleges and proves that he was induced not to read the policy by some trick or fraud of the other party."

In the instant case, the written contract was received and read by one of the plaintiffs and accessible to the other plaintiff some nine months before the loss occurred. The plaintiff who read the policy at the time of its receipt testified that he also read the provision contained in the rider. It would have been a very simple matter to have adjusted any misunderstanding at that time. In any event, the insistance at this late date that there was a mistake cannot be sustained without excusing plaintiffs for their neglect. Regardless of what the situation might have been had the loss occurred before the policy was issued, the written contract, when issued and accepted, superseded all oral negotiations and its terms could not be varied or contradicted by parol in the absence of clear and very convincing proof of mutual mistake and the freedom of plaintiffs from neglect.

As to the second cause of action the judgment should be sustained. No question is raised as to defendant being liable upon this cause of action. The only controversy between the parties is that defendant insists upon its right to replace the stolen items and plaintiffs insist upon recovery of their monetary value because of the total destruction of the plane. There are no reported cases cited by either party where this situation has been before the courts, nor do we, upon independent investigation, find any. The most nearly analogous cases are those wherein the insurer tendered restoration of insured buildings which, when restored, would not be the same as before the loss. The rule is stated in The Law of Insurance by Joyce (2d Ed.) par. 3158, as follows:

"Nor can insurer avoid liability by an offer to repair a building which

is so far injured as to be incapable of repairs, or where it cannot be restored to the condition it was before the disaster or to a condition practically as good or as serviceable as before the loss."

See, also, Keystone Paper Mills Co. v. Pennsylvania Fire Ins. Co., 291 Pa. 119, 139 Atl. 627; Northwestern Nat. Ins. Co. v. Woodward, 18 Tex. Civ. App. 496, 45 S. W. 185; Camden Fire Ins. Ass'n of Camden, N. J., v. Reynolds, 190 Ark. 390, 79 S.W. 2d 54.

It would be useless to allow defendant to replace the stolen items upon an airplane that was totally destroyed. Such a construction of the policy contract would be entirely outside the intention of the parties at the time of contracting.

The judgment for plaintiffs for $281.78 upon their second cause of action is affirmed and upon the first cause of action the judgment is reversed and the cause remanded, with directions to enter judgment thereon for defendant, each party being assessed one-half of the court costs.

HALLEY, V. C. J., and GIBSON, JOHNSON, and O'NEAL, JJ., concur. WELCH and CORN, JJ., dissent.