360 P.2d 372

Brady B. PORTER, Ralph R. Hackey, F. E. Snowder and William Ketchem, Plaintiffs-Appellants,

v.

BUTTE FARMERS MUTUAL INSURANCE COMPANY, Inc., Defendant-Appellee.

No. 6653.

Supreme Court of New Mexico.

March 13, 1961.

J. D. Weir, J. R. Crouch, Las Cruces, for appellants.

Garland & Martin, Las Cruces, for appellee.

PER CURIAM.

Upon consideration of Motion for Rehearing, the original opinion heretofore filed is withdrawn and the following substituted therefor.

CHAVEZ, Justice.

Plaintiffs, appellants, filed suit to recover on four contracts of hail insurance. From a judgment dismissing appellants' complaint and judgment for appellee, this appeal follows.

Appellants' complaint alleged that at the time the applications for insurance were signed in blank there was no specific expiration date in the insurance contract, and that appellants did not know the insurance policies expired on October 1, 1957. Appellants further alleged that at the time the applications were signed, they contained a provision that the crops therein named were to be insured against loss and damage by hail for the crop year 1957, and that the expiration date of October 1, 1957, was inserted after receipt of the policies by appellee in Las Cruces, New Mexico; and that this did not express the true agreement of the parties.

Appellants' second cause of action alleged that appellee, by inserting October 1, 1957, and stating that it covered loss or damage

by reason of hail for the crop season of 1957 was ambiguous, and that the crop season does not expire on October 1, 1957, but at a much later date. Appellants further allege that the two provisions made it ambiguous as to the true expiration date and prayed that the ambiguity be resolved for appellants. Appellants further prayed that the trial court determine that the crop season for cotton did not expire on October 1, 1957, but at a much later date.

Appellee denied all of the allegations of appellants' complaint, except the agency of Clyde Jones, the soliciting agent, and denied there was any ambiguity in the contract. Appellee affirmatively alleged that the applications were received and upon acceptance by appellee and before delivery to appellants, the date of October 1, 1957, was inserted in the policies as the expiration date; that the policies issued were delivered to appellants and were held in their possession for over five months without protest as to the terms and conditions of said policy.

The trial court in substance made the following findings of fact: That the applications signed by each appellant were in blank, and that they contained no date of commencement or expiration; that the applications were received and accepted by appellee and policies of insurance issued, each containing on the face thereof in bold capitalized type, that the policies expired October 1, 1957; that the policies were received by each appellant within one or two weeks from the date of issuance and retained by them for approximately five months without appellants having looked at or read said policies, and that appellants made no objection or protest thereto; that each of said policies expired October 1, 1957, and that the loss sustained by appellants on October 9, 1957, was after the date of expiration of each policy.

The trial court further found that appellants Porter, Hackey and Ketchem, did not discuss with the soliciting agent when the policies would expire and that there was no understanding, agreement or representation by the agent and appellants as to the date of expiration; that appellant, Snowder, knew at the time of his application that said policy expired on October 1, 1957, and that no representation was made by the agent that said policies would actually expire at any given date.

The trial court also found that appellee's soliciting agent made no false representation to appellants as to the date of the expiration of said policies, and made no statement of any kind to appellants, or either of them, that would lull them into a sense of security; that there were no fraudulent acts on the part of appellee, or its agent, in the soliciting or execution of said policies, and no overreaching by appellee, or its agent, of any of appellants in obtaining said insurance policies; that there was no ambiguity in the policies, and that the expiration date was typed in bold capitalized type

so that when said policies were received, the expiration date could be readily seen.

The trial court further found that notwithstanding appellants' allegations that the applications were for the crop year 1957, that each of said appellants admitted in open court that said policies did not contain the words "Crop Season 1957" but merely contained the language "Crop Season 19—"; that notwithstanding appellants' allegations that the crop year 1957 extended beyond October 1, 1957, appellants had each wholly failed to produce any evidence showing that the crop year extended to any specific date in 1957; that each appellant accepted the contract of insurance as written by appellee, expiring October 1, 1957, and by having the same in their possession for a reasonable length of time and not having made any objections to the terms of said policies, or advising appellee that they had not accepted the same as written, that each appellant was guilty of negligence in failing to read the policies before the loss occurred; and that appellants were barred from claiming that there was any other policy containing a date of expiration different to October 1, 1957.

The trial court also found that appellants did not rely upon mutual mistake but rested their cause of action on the ground of fraud, and that no evidence was produced by appellants to show that appellee, or its agent, was guilty of fraud, constructive or actual, in accepting the applications for insurance and the subsequent issuance of the policies.

The trial court concluded as a matter of law that neither appellee nor its soliciting agent was guilty of fraud, actual or constructive, in dealing with appellants and accepting their applications for insurance and the subsequent issuance of the insurance policies; that the appellants accepted the policies of insurance as written by appellee expiring October 1, 1957; and that the policies of insurance were not ambiguous and the same expired October 1, 1957.

■ Appellants contend that the trial court erred in overruling appellants' motion for summary judgment, which was based on the representation contained in the "work sheet" that the policies would be effective twenty-four hours after signing, and that the only matter relating to the expiration date was the statement that the policies would afford coverage for the year 19—. Appellants argue that upon appellee's receipt of the applications and by inserting in each policy that "This Policy Expires October 1, 1957," that appellee committed fraud as a matter of law. Appellants' second theory on this point is that the contracts were ambiguous as to the period of coverage.

There is no merit in appellants' contentions. The applications and policies, signed by each appellant, show on their face that each policy would not be effective until accepted by appellee. Also, the application for insurance and policy insurance issued to each appellant contained the following:

"It is agreed that the by-laws of the association and any amendments thereto, together with this application and the associations' acceptance thereof endorsed hereon, shall constitute the entire contract between the applicant and the association; and such by-laws and amendments thereto are hereby specifically made a part of this contract."

Art. III, § 1 of the by-laws provides that:

"The association shall issue policies of insurance only on * * * hail, * * * for any length of time not to exceed five years, * * *."

■ It is well established that the application by the person seeking insurance is not the contract, but is a mere offer or proposal for a contract of insurance, and that before the contract of insurance is effected and any contractual relationship exists between the parties, it is necessary that the application be accepted by the insurer, since insurance companies are not compelled to accept every application presented and may stipulate upon what terms and for what period of time the risk may be accepted. 29 Am.Jur., Insurance, § 197, p. 587. See also 44 C.J.S. Insurance § 329, p. 1261.

■ As to appellants' theory that the contracts were ambiguous, we say that even if we construe the policies strictly against the insurer, as required by the rule, it cannot be said that the language as to the expiration date contained in the policies is doubtful or ambiguous. This court has held that where the insured had an opportunity of seeing and examining the policy, he was bound by the statements therein contained in the absence of a showing of fraud sufficient to avoid the general rule. Gendron v. Calvert Fire Ins. Co., 47 N.M. 348, 143 P.2d 462, 149 A.L.R. 1310.

► ■ It has also been held that an applicant for insurance who receives a policy which does not conform to the agent's representations, must notify the insurer within a reasonable time of refusal to accept the policy, and retention of the policy without objection is regarded as an acceptance thereof. State Distributing Corp. v. Travelers Indemnity Co., 224 N.C. 370, 30 S.E.2d 377.

In a case frequently quoted, it was held that an applicant for insurance who accepts a policy, the provisions of which are plain, clear and free from all ambiguity, is chargeable with knowledge of its terms and legal effect. It is the duty of the assured to read and know the contents of the policy before he accepts it, and where he fails or neglects to do so, he is estopped from denying knowledge of its terms and conditions, unless he alleges and proves that he was induced not to read the same by some trick or fraud of the other party. National Fire Ins. Co. of Hartford v. McCoy, 205 Okl. 511, 239 P.2d 428. See also Del Monte v. Travelers Ins. Co., Sup., 17 N.Y.S.2d 555.

With respect to appellant's contentions as to fraud, together with the assignments of error regarding the refusal to grant certain requested findings and the granting of some of those requested by appellee, we are faced with a consideration of two rules: (1) The rule of trial procedure that upon a motion to dismiss at the close of plaintiff's case, all of the evidence must be viewed in the light most favorable to the plaintiff, together with all reasonable inferences arising therefrom; and (2) the rule of appellate procedure that the evidence must be considered in the aspect most favorable to the appellee, and that the facts found by the trial court are the facts to be reviewed, if supported by substantial evidence.

Any seeming inconsistency between these two rules is fully resolved in Sandoval County Board of Education v. Young, 43 N.M. 397, 94 P.2d 508, and Pankey v. Hot Springs Nat. Bank, 46 N.M. 10, 119 P.2d 636, with the following result:

"It is the duty of the trial court to find every essential fact necessary to sustain the plaintiff's case, if it has substantial support in any of the evidence or any reasonable inference that can be deduced therefrom; that on appeal it will be presumed that the trial court made such findings as required, and thereafter the burden is on the appellant to successfully attack the findings of the trial court in the appellate court, or alternatively, to convince the appellate court that the trial court failed to adopt certain findings borne out by plaintiff's evidence or reasonable inferences therefrom.

Appellants claim error due to the trial court's refusal to grant their requested finding of fact that the application or "work sheets" contained a provision that the insurance policies would become effective twenty-four hours from the date of the application. The material issue litigated was the date of the expiration of the policies. The applications were signed in blank, forwarded by the soliciting agent to the company, and the policies were then issued. The work sheet forms used by the agent contained information as to the coverage, the name of the policy holder, and were not a part of the policies. The evidence shows that the policies were received by appellants and were in their possession approximately five months without protest. No misrepresentation or fraud was perpetrated by appellants, who relied solely upon fraud. As stated by Justice Compton in Brown v. Cobb, 53 N.M. 169, 204 P.2d 264, 266:

"Appellant requested the trial court to make separate findings of fact which were refused. These requests are themselves a challenge to sufficiency of the evidence to sustain the material findings made. Consequently, the facts thus found are the facts to be reviewed, and if supported by substan-

tial evidence the findings must be sustained. * * * "

Applying the combined rule heretofore discussed to the instant case, and having carefully examined the record, we conclude that the trial court correctly found the facts as required, and we further determine that there was no error in the refusal to grant the requested findings made by appellants.

There is no merit in appellants' point No. 19. At the close of plaintiffs' case, appellants moved to amend their complaint on the basis that a member of the board of directors of appellee's association asserted that the loss would be paid, or that he was going to do something about it, and that appraisers were sent out by appellee; this, on the theory of estoppel and waiver to assert October 1, 1957, as the expiration date of the contract.

There is evidence that a questionnaire was sent to each member of appellee's association, asking them if they wanted to pay the loss, regardless of the fact that the loss occurred after the expiration date of the policy. The testimony shows that seventy-six per cent of those who replied voted against paying appellants for anything which occurred after the expiration of the policy. Appellee at all times denied liability, even though it made an investigation to determine whether to pay the claims, regardless of liability.

Appellee's conduct and the statement of a member of the board of directors, all occurred after the loss had taken place. One claiming benefit of equitable estoppel must have relied upon conduct and representations of the one sought to be estopped. Treadwell v. Henderson, 58 N. M. 230, 269 P.2d 1108.

Estoppel by conduct arises: Where a party has been induced by the conduct of another to do, or forbear doing, something he would not have, or would have, done but for such conduct; when disadvantage results from such forbearance or action. State ex rel. Fitzhugh v. City Council of City of Hot Springs, 56 N.M. 118, 241 P.2d 100.

Appellee's actions did not compel appellants to change their position. An "estoppel" rests on one party's word or deed, on which another party rightfully relies, and, so relying, changes his position to his injury. Triple Cities Const. Co. v. Maryland Cas. Co., 4 N.Y.2d 443, 176 N.Y.S.2d 292, 151 N.E.2d 856, 858.

Finding no error, the judgment will be affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.

MOISE, J., dissents.

NOBLE, J., not participating.

MOISE, Justice (dissenting).

I find myself unable to agree with the opinion of the majority.

In order to understand the basis for my disagreement certain additional facts must be set forth. These facts are:

(1) The work sheet which was part and parcel of the application and is denominated "Application for Insurance" and which was signed by appellants stated, "This policy becomes effective in twenty-four hours after signing."

(2) At the same time the "application" referred to in (1) above was signed, another instrument denominated "Application for Insurance and Policy Insurance" was signed in blank.

(3) The instrument referred to in (2) above is in form an application for membership in the company and hail insurance on growing crops "for the crop season of 19—," and stated, "Upon payment of the premium herein provided and upon acceptance hereof by the association this policy shall be in full force and effect."

(4) The application for the Ketchem policy was signed and premium paid at 8:00 a. m. on April 19, 1957, and accepted by the company at 2:00 p. m. on May 6, 1957.

(5) The application for the Hackey policy was signed and premium paid at 4:00 p. m. on April 30, 1957, and accepted by the company on May 14, 1957.

(6) The application for the Porter policy was signed and premium paid at 4:00 p. m. on April 30, 1957, and accepted by the company on May 14, 1957.

(7) The application for the Snowder policy was signed and premium paid at 6:00 p. m. on May 6, 1957, and accepted by the company on May 14, 1957.

As I understand appellants' theory it is based on the fact that the policies became effective 24 hours after being signed, and that thereafter the company could not change the terms by shortening the time for which coverage was granted, and if it did so this would be constructive fraud.

Concerning the argument that the policies were in effect in 24 hours, I think there can be little doubt. To say the least, there was a conflict between the statement in the application that it was "effective twenty-four hours after signing" and the statement in the "Application and Policy" that it would be in full force and effect "upon payment of the premium herein provided and upon acceptance hereof * * *." Except as to plaintiff Snowder whose policy was not applied for until May 6, if a hail loss had occurred before May 5, there is no question in my mind we would have upheld a recovery of up to 10% of the face value of the policies being the amount provided for losses occurring before that date,

and if loss had occurred on May 5, a recovery of up to 50% of the face value as provided in the policies would have been sustained—even though the policies had not been issued, but were issued on a later date. Douglass v. Mutual Benefit Health & Accident Ass'n, 42 N.M. 190, 76 P.2d 453. If this is true, and the policies were in effect for this purpose, how can it be asserted or argued that at a later date they were still open for changing of terms and conditions therein? To my mind it was a contract 24 hours after signature and the company should be bound.

Appellants should prevail for another reason. They applied for insurance for the crop year 1957, and the attempt to limit the coverage to prior to October 1st, without specifically calling it to the attention of the named insureds is constructively fraudulent, or to say the least, such an ambiguity was injected as to require construction by the court and in so doing the policies should be construed strictly against the company. Gendron v. Calvert Fire Ins. Co., 47 N.M. 348, 143 P.2d 462, 149 A.L.R. 1310; National Mut. Savings & Loan Ass'n v. Hanover Fire Ins. Co., 40 N.M. 44, 53 P.2d 641. Admittedly, the crop season extended past October 1, and by inserting this date the ambiguity resulted. It is interesting to note that the expiration date was added even though there was no blank space provided in the form for this purpose. It was merely crowded in. This fact in itself is proof amply clear and satisfactory to support a finding of fraud under the rule in Lumpkins v. McPhee, 59 N.M. 442, 286 P.2d 299, and Mosely v. National Bankers Life Ins. Co., 66 N.M. 330, 347 P.2d 755.

I do not see where the agreement in the application and policy that the association by-laws shall be part of the contract of insurance, or the part of the by-laws quoted by the majority in any way lends support to the idea that "crop season" could be unilaterally given an earlier termination date after the policy was effective and without specifically calling it to the attention of the insured.

It is probably true as stated in the majority opinion that the application does not ordinarily make a contract, and that the same is merely an offer which must be accepted by the company at which time the company may attach conditions and limitations thereon. However, these policies were to be effective 24 hours after applicant signed and were to be for the "crop season"—so as I see it the rule should not apply.

I do not agree that there is no ambiguity as to the expiration date, as indicated by the majority. Neither do I think Gendron v. Calvert Fire Ins. Co., supra, is authority on this phase of the case. An examination of that case will demonstrate that the address for notice as contained in the

original policy was correct. The only question was whether or not the plain and unambiguous provisions of the policy as to notice and change were binding or were to be ignored as constructively fraudulent. That the result reached in that case was correct is evident. However, it does not follow that the change made by the company in the policy here should be binding. It should be noted that the case of Metzger v. Aetna Ins. Co., 227 N.Y. 411, 125 N.E. 814, is cited in the Gendron case as authority for the proposition that if the insured had an opportunity to examine the policy he cannot be heard to complain of its contents. From an examination of that case it is seen that the court there recognized that there are exceptions to the rule, citing McMaster v. New York Life Ins. Co., 183 U.S. 25, 22 S.Ct. 10, 46 L.Ed. 64; Hay v. Star Fire Ins. Co., 77 N.Y. 235, 33 Am.Rep. 607; Flickinger v. Farmers' Mut. Fire & Lightning Ins. Ass'n, 136 Iowa 258, 113 N.W. 824; Salmon v. Farm Property Mut. Ins. Ass'n, 168 Iowa 521, 150 N.W. 680. An examination of these cases discloses they are much closer on their facts to the instant case than either Gendron or Metzger. The McMaster case is, in my opinion, very close to the instant case on its facts, involving a question as to date of expiration of the coverage. Hay v. Star Fire Ins. Co., supra, holds that it was bad faith for the company to change terms of a renewal policy from those of the original without notice, and that the negligence of insured in not discovering the change until after a loss had occurred did not as a matter of law foreclose right of recovery, but made the same discretionary with the court which acted properly in granting relief.

The following language is pertinent:

"The negligence of the plaintiff in not discovering the change, and laches in not sooner seeking relief, are questions which make the propriety of granting relief in a given case discretionary. The court below upon the findings of fact we think properly exercised its discretion in this case in granting relief. Policies of fire insurance are rarely examined by the insured. The same degree of vigilance and critical examination would not be expected or demanded as in the case of some other instruments. It is found that plaintiff did not in fact examine the policy until after the fire, when, for the first time, he was informed of the peculiar terms of this provision." (633 Am.Rep. 607, 610).

Flickinger v. Farmers' Mut. Fire & Lightning Ins. Ass'n, supra, is close on its facts, involving as it does the reformation of an insurance policy to make it show the expiration date agreed upon.

Headnote 1 to Salmon v. Farm Property Mut. Ins. Ass'n, supra, supports right to

agreed terms even though plaintiff had never seen the application.

The best case on the proposition is Kansas Amusement Co. v. Maryland Cas. Co., 1927, 122 Kan. 800, 253 P. 405. This case followed German American Ins. Co. of New York v. Darrin, 80 Kan. 578, 103 P. 87, which is very similar to our case, and Pfiester v. Missouri State Life Ins. Co., 85 Kan. 97, 116 P. 245, which is also helpful on question of negligence of insured in not reading the policy when it differs from the application. Kansas is not the only state having such a rule.

Appelman in Vol. 12 of his work on Insurance Law and Practice, at page 219, says:

"Until informed to the contrary, the insured had the right to assume that the policies issued were based on the application as made. Several states have held, therefore, that the fact that the insured did not read such policy and discover those changes would not excuse the insurer."

This statement is supported by McElroy v. British America Assur. Co. of Toronto, Canada, 9 Cir., 94 F. 990, and California Reclamation Co. v. New Zealand Ins. Co., 23 Cal.App. 611, 138 P. 960, in addition to the cases from Kansas, cited supra.

In addition, the same conclusion is reached in Ames v. Employers Cas. Co., 16 Cal.App.2d 255, 60 P.2d 347, and the recent case of Lewis v. Hinman-Ball & Bonner, 154 Cal.App.2d 710, 316 P.2d 673, 677, from which is quoted the following being directly in point in the instant case where nonsuit was granted at the close of plaintiffs' case:

"Appellants assign error in the order granting a nonsuit as to the second cause of action. That count is based upon the claim that Argonaut issued a workmen's compensation policy covering appellants as to all their operations in the state, which remained in effect when Watkins was injured on the San Francisco job, and that Argonaut was therefore obligated to discharge Watkins' claim. There was some evidence possibly warranting the inference that the endorsement limiting the Argonaut policy to the Los Angeles job was added after issuance of the policy. Also, appellant Queen did testify that he had asked for, and Hinman had agreed to furnish, coverage of appellants' operations statewide. In view of the evidence as to the relationships of Hinman and Argonaut, it could be argued, as against the motion for nonsuit, that appellants had the right to rely upon the presumption that the policy issued was that which they ordered. California Reclamation Co. v. New Zealand Ins. Co., 23 Cal.App. 611, 138 P. 960. Disregarding all conflicting evidence, and indulging all inferences in favor of plaintiffs, as required upon motion for

non-suit, either of these items was enough to require denial of the motion * * * "

That there is a "more stringent doctrine" must be recognized. 12 Appelman, Insurance Law & Practice, § 7155, page 220. However, in my opinion, the better rule is to not require of an insured something we know as a practical matter is not ordinarily done, namely, that he read and understand the terms of his policy. To my mind, the cases cited above set forth a proper rule. To hold otherwise puts every insured at the mercy of the company in its fine print, and sets an unrealistic standard of conduct. I venture the opinion that before long the court will be faced with trying to distinguish later arising cases on their facts as it seems to me the Gendron case, supra, requires here.

The majority cites National Fire Ins. Co. of Hartford v. McCoy, 205 Okl. 511, 239 P. 2d 428, and Del Monte v. Travelers Ins. Co., Sup., 17 N.Y.S.2d 555, in support of their position that the insureds were duty bound to read the policies when delivered or be estopped from denying knowledge of their terms. The first of these cases is easily distinguishable on its facts from the instant case, as there one of the co-owners of the airplane covered by the insurance had actually read the policy and knew its contents, and in addition there had been no contrary understanding between the insureds and the agent and no ambiguities were present. Any or all of these differences would be sufficient to give rise to a different rule. The report of the second case does not recite the facts but states that the policy had been accepted as issued. How this was accomplished is not clear. Also Metzger v. Aetna Ins. Co., supra, is cited as authority for the holding. This case has already been discussed and distinguished above. In any event, in my view, neither of these cases is strong support for the rule adopted by the majority under the facts of the instant case.

Plaintiff Snowder testified that he knew of the October 1 expiration date and had some discussion with the soliciting agent as to the possibilities of getting it changed. This fact might justify a different result as to Snowder because it can be argued that his retention of the policy was an acceptance under the rule announced by the majority. However, the ambiguity was still present and in my opinion this plaintiff as well as the others had made a prima facie showing sufficient to withstand a motion at the close of their case. Lewis v. Hinman-Ball & Bonner, supra.

The trial court's action in sustaining the motion was error and the cause should be reversed. The majority having determined otherwise, I respectfully dissent.