Raymond PENDLETON, Appellant,

v.

PAN AMERICAN FIRE AND CASUALTY COMPANY, Appellee.

No. 7126.

United States Court of Appeals Tenth Circuit.

May 16, 1963.

Rehearing Denied July 16, 1963.

Frank Andrews, of Seth, Montgomery, Federici & Andrews, Santa Fe, N. M., for appellant.

A. H. McLeod, Albuquerque, N. M. (W. A. Keleher and Russell Moore, Albuquerque, N. M., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellant, Pendleton, commenced this diversity suit in the lower court against appellee, Pan American Fire and Casualty Company, to recover upon a comprehensive liability insurance policy. Trial was had to the court, without a jury, and resulted in a judgment adverse to Pendleton. This appeal is from that judgment.

At the date of the issuance of the policy in question by appellee to appellant, he was doing business at Springer, New Mexico, personally as the Pendleton Oil Company and also through a corporation, Cactus Butane Company, Inc. Cactus Butane owned the gas distribution system in Springer and metered gas to its retail customers. Pendleton Oil furnished the liquefied petroleum gas to Cactus Butane for distribution to its customers. During the term of the policy the Springer Gas Company, Inc., a corporation, became the successor to Cactus Butane. The policy was issued July 24, 1956, to Pendleton Oil Company, Cactus Butane Company, Inc., and Arthur A. Kersh, doing business as Kersh Mercantile, with Springer Gas being thereafter substituted for Cactus Butane. It was the ordinary comprehensive liability type policy providing limits of coverage for bodily injuries of $100,000 for each person and $300,000 for each accident together with $50,000 property damage for each accident. This policy contained an endorsement [1] purporting to exclude coverage for the distribution of liquefied petroleum gas. A second comprehensive liability policy of insurance was issued at the same time by appellee, naming Cactus Butane as the insured, with Springer Gas being later substituted as a named insured, with top limits of $25,000. The Springer Gas Company has assigned to Pendleton all of its rights under both policies of insurance.

During the terms of the two policies and on November 25, 1956, an explosion occurred on the premises of one of the gas distribution system's customers resulting in the death of two persons, the injury of others and extensive property damage. Soon after the explosion, Pendleton took the two insurance policies to appellee's state agent and discussed the explosion with him. The agent re-

---

[1]. "It is understood that the following operations are excluded under this policy:

"Gas Distributing—liquefied petroleum gas—all operations in connection with local distribution by gas mains or piping from central tanks to ultimate consumers, including maintenance, meter readers, and installation, servicing and repair of liquefied petroleum gas systems, piping and customers' equipment and all other operations usual and incidental to the operation of a Liquefied Petroleum Pipeline Operation.

\* \* \* \* \*

"Endorsement for Liquefied Petroleum Gas Licensee Policy of Insurance Filed With the New Mexico Liquefied Petroleum Gas Commission Under Chapter 97 of the 1955 Session Laws

"(1) The policy to which this endorsement is attached is hereby amended to assure compliance by the Insured and the Insuring Company with Chapter 97 of the New Mexico 1955 Session Laws and the pertinent Rules and Regulations of the New Mexico Liquefied Petroleum Gas Commission."

ferred Pendleton to the law firm of Gilbert, White and Gilbert at Santa Fe, and after a conference with Mr. Carl Gilbert of that firm, Pendleton employed Mr. Gilbert to represent him in all matters pertaining to the explosion. Later, with Pendleton's consent, appellee also employed Mr. Gilbert to represent it in the same matter. Six actions for damages resulting from the explosion were thereafter filed in state court naming Springer Gas as the defendant. Subsequently, Pendleton was joined as an additional defendant in these cases, and it was alleged that he was negligent in over-filling the gas tanks which supplied the distribution system and in improperly installing equipment in the building where the explosion occurred. As a matter of trial strategy, Mr. Gilbert concluded it would be beneficial to have separate counsel appear of record for Pendleton, and he so advised appellee. As a result, Mr. F. A. Catron of Santa Fe was employed by appellee to represent Pendleton. Catron and Gilbert worked together in the investigation work and other preparation for trial of the cases. The six cases were consolidated for trial and the trial, without a jury, was commenced on March 23, 1959, in the state court at Raton, New Mexico. During the course of the trial, the evidence showed Springer Gas Company to be the alter ego of Pendleton and the plaintiffs were permitted to orally amend their complaints by alleging that Springer Gas was the agent of Pendleton in the sale of gas to the individual customers. After nearly two weeks of trial, settlement of the cases was made for an aggregate amount of $151,000.

At the outset of the settlement discussions appellee agreed to pay the full amount of liability on the $25,000 policy, and eventually agreed to pay an additional $20,000 provided Pendleton would release it from further liability on the larger policy. At this same time, Pendle-

ton was advised by Gilbert and Catron that he should seek independent legal advice because of their representation of appellee. Pendleton sought such advice and decided the settlement of the six cases should be made but refused any suggestion that he release appellee from liability upon the large policy. The settlement was made with the insurer paying $25,000 of the judgment and Pendleton paying $126,000.

In effectuating the settlement agreement in the state court, Mr. Gilbert, representing the insurer, included in the journal entry of judgment a specific finding of fact intended to be favorable to the insurer and against the insured as to its liability upon the insurance policy in question.[2] After the entry of the judgment, Pendleton, through his new retained counsel, attempted to have these findings stricken from the record, but Mr. Gilbert on behalf of the insurer, refused to agree to any such change in the journal entry. The record also shows that Mr. Catron, who was employed by the insurer to separately represent Pendleton personally, did nothing to protect Pendleton from the purported sting of this questioned finding.

As an additional factual matter, it should also be noted that the correspondence in the record between Mr. Gilbert and appellee clearly reflects that from the inception of Mr. Gilbert's employment by the insurer until the eve of the state court trial, an uncertainty existed, on the part of both Mr. Gilbert and the insurer, as to the exact coverage afforded Pendleton by the policy in question.

This action resulted from the insurer's refusal to assume liability for payment of the entire judgment under the terms of the $100,000—$300,000 policy. The appellant contends that appellee assumed the defense of the state court suits and completely controlled and directed such defense up to the eve of settlement, all without a reservation of rights agree-

2. "That it is not true that there was any negligence on the part of the said Raymond Pendleton, d/b/a Pendleton Oil and Gas Company, in the filling of the tanks of the defendant, Springer Gas Company, Inc., or otherwise except as hereinbefore specified."

ment or other disclaimer of liability, and therefore it has waived its defense of noncoverage and is now estopped to deny liability. Appellee contends it did nothing that would amount to a waiver or an estoppel.

The findings of fact made below are very brief and may be summarized as follows: The plaintiff-appellant, at all times, was aware of the fact that the policy did not cover the gas distribution system; the explosion was caused by a defect in the distribution system; the policy was in the plaintiff's possession and he had a duty to read and become acquainted with its terms; that the insurer committed no acts amounting to a waiver or an estoppel and did not mislead the plaintiff or other insured. It must be observed that these findings are, in the final analysis, either findings of ultimate facts, without supporting findings of basic facts, or conclusions of law. Nevertheless, the evidence is not in conflict and the basic facts necessary to a disposition of the case are not in dispute. We may therefore dispose of the controversy on the record before us.

At the outset, we think this case is controlled by the long established rule that a liability insurance carrier, which assumes and conducts the defense of an action brought against its insured with knowledge of a ground of forfeiture or noncoverage under the policy, and without disclaiming liability or giving notice of a reservation of its right to deny coverage, is thereafter precluded in an action upon the policy from setting up the ground of forfeiture or noncoverage as a defense. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert the defense of noncoverage. New Jersey Fidelity & Plate Glass Ins. Co. v. McGillis, 10 Cir., 42 F.2d 789; Schmidt v. National Auto. & Cas. Ins. Co., 8 Cir., 207 F.2d 301, 38 A.L.R.2d 1142; General Tire Co. of Minneapolis v. Standard Acc. Ins. Co., 8 Cir., 65 F.2d 237; Claverie v. American Casualty Co. of Reading, Pa., 4 Cir., 76 F.2d 570, cert. denied, 296 U.S. 590, 56 S.Ct. 102, 80 L.Ed. 417; 29A Am. Jur., Insurance, § 1465, pp. 577–579; 45 C.J.S. Insurance § 714, pp. 684–690; Annot.'s, 81 A.L.R. 1326 and 38 A.L.R.2d 1148. Judge Breitenstein, speaking for this Court, in Harbin v. Assurance Company of America, 308 F.2d 748, 749, recognized the difficult position an insurer sometimes finds itself in, in undertaking the defense of an action brought against its insured, and said:

> "In such circumstances the control of the defense by the insurer carries with it the potential of prejudice to the insureds and the assumption of such control without a reservation of right to deny liability would have obligated the insurer to pay within the policy limits if the plaintiff should succeed."

Indeed, by the weight of authority, it is not necessary for the insured to show prejudice in such a situation because he is presumed to have been prejudiced by virtue of the insurer's assumption of the defense. Schmidt v. National Auto. & Cas. Ins. Co., supra; General Tire Co. of Minneapolis v. Standard Acc. Ins. Co., supra; 45 C.J.S. Insurance § 714, p. 689; 29A Am.Jur., Insurance, § 1466, p. 579.

In the case of Traders & General Ins. Co. v. Rudco Oil & Gas Co., 10 Cir., 129 F.2d 621, at page 627, 142 A.L.R. 799, Judge Murrah speaking for this Court said:

> " * * * The right to control the litigation in all of its aspects carries with it the correlative duty to exercise diligence, intelligence, good faith, honest and conscientious fidelity to the common interest of the parties. * * * When the insurer undertakes the defense of the claim or suit, it acts as the agent of its assured in virtue of the contract of insurance between the parties, and when a conflict of interest arises between the insurer, as agent, and assured, as principal, the insurer's conduct will be subject to closer scrutiny than that of the ordi-

nary agent, because of his adverse interest. * * * "

 Appellee attempts to brush aside these legal principles with the assertion that it was obligated to defend the suits because of the allegations in the pleadings. We agree with appellee that the duty of an insurer to defend is determined in the beginning of the litigation by the coverage afforded by the policy, as compared with the allegations of the complaint or petition filed against the insured. The duty to defend may also attach at some later stage of the litigation if the issues of the case are so changed or enlarged to come within the policy coverage. Harbin v. Assurance Company of America, supra. It may be conceded that at the outset of the litigation appellee was obligated to defend Springer Gas, the named insured in the policy with the smaller limits of liability. However, when Pendleton became a party defendant to the state court suits and it was alleged that he was negligent in over-filling the storage tanks which supplied the Springer distribution system, appellee apparently assumed it had an obligation under the questioned policy to defend Pendleton. With this we do not agree. The tanks were a part of the gas distribution system and "all other operations usual and incidental to the operation" of the pipelines were excluded from coverage by the endorsement. It was also alleged that Pendleton was negligent in the installation of gas equipment in the building where the explosion occurred and this operation was likewise excluded from coverage by the endorsement. Then during the course of the state trial, liability on Pendleton was sought because the evidence conclusively showed Springer Gas to be his alter ego, thus making Pendleton personally liable because of the negligence of Springer Gas. Neither could this contention create an obligation on the insurer to defend, as Springer Gas' only business was the operation of the gas distribution system, which was in its entirety excluded. Giving the endorsement its full legal effect, as appellee wants us to do, it is clear that the insurer at no time had an obligation under the questioned policy to defend Pendleton, but it assumed that obligation, employed two lawyers to defend him and assumed full control of the litigation. It maintained this full control up to the time of settlement, when it, in effect, abandoned him. No reservation of rights or non-waiver agreement was entered into with Pendleton, who was a named insured in the policy in question but not in the Springer Gas policy. Appellee does not contend that a non-waiver or reservation of rights agreement existed but stresses the finding of the court below to the effect that Pendleton knew, or should have known, that he personally did not have coverage as to the distribution system because of the endorsement. Assuming this to be true, we do not believe it is controlling here. The insurer, after making a thorough investigation of the explosion and with full knowledge of the contents of the insurance policy, including the endorsements attached thereto, and of the charges of negligence against Pendleton in the state court suits, undertook to, and did, assume complete control of his defense in those suits. It did not at any time notify appellant that it was reserving the right to later contest coverage and it made no attempt to make a non-waiver agreement with him. By this conduct of the insurer, appellant was induced to, and did, relinquish control of his defense in the suits to the insurer. Thus, this situation falls within the rule of estoppel by conduct as set forth in Porter v. Butte Farmers Mutual Insurance Company, 68 N.M. 175, 360 P. 2d 372, where it was said:

"Estoppel by conduct arises: Where a party has been induced by the conduct of another to do, or forbear doing, something he would not have, or would have, done but for such conduct; when disadvantage results from such forbearance or action. State ex rel. Fitzhugh v. City Council of City of Hot Springs, 56 N.M. 118, 241 P.2d 100." (360 P.2d at 376.)

Moreover, it has been held that the insurer's conduct in the type of situation we have here operates as an estoppel to later contest an action upon the policy even though the facts may have been within the knowledge of the insured equally as well as within the knowledge of the insurer. Tozer v. Ocean Accident & Guarantee Corp., 94 Minn. 478, 103 N.W. 509; Humes Const. Co. v. Philadelphia Casualty Co., 32 R.I. 246, 79 A. 1. We conclude that the insurer is estopped to now deny liability upon the insurance policy in question.

The basic facts of this controversy being undisputed in the record, we must conclude that the ultimate facts or bare conclusions of fact found by the trial court which are inconsistent with the basic facts set forth herein are clearly erroneous.

Reversed and remanded, with instructions to enter judgment for the plaintiff-appellant, as prayed for in his complaint.