The **PEERLESS INSURANCE COMPA-NY**, a Corporation, Appellant,

v.

**TRAVELERS INSURANCE COMPANY**, a Corporation, Appellee.

No. 21293.

United States Court of Appeals
Ninth Circuit.

April 5, 1968.

John H. Westover (argued), Richard E. Mitchell, of O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Ariz., for appellant.

William P. French (argued), Robert E. B. Allen, of Kramer, Roche, Burch, Streich & Cracchiolo, Phoenix, Ariz., for appellee.

Before HAMLIN, BROWNING and ELY, Circuit Judges.

HAMLIN, Circuit Judge.

The Peerless Insurance Company, a corporation, appellant herein, filed an action in the Superior Court of the State of Arizona against Travelers Insurance Company, a corporation, appellee herein, for a declaratory judgment adjudging and declaring the appellee was obligated under its insurance policy theretofore issued to the Shell Oil Company to pay any judgment which might be affirmed or rendered against Shell in an action theretofore brought against Shell by one Jean Collar. By reason of diversity the action was properly transferred to the United States District Court for the District of Arizona. The action was there tried by the court without a jury upon stipulated facts and exhibits. The district court made findings of fact and conclusions of law, and rendered judgment in favor of the appellee. A timely appeal was taken to this court which has jurisdiction under 28 U.S.C. § 1291. We affirm.

We shall set out certain pertinent facts which have been agreed to by the parties. Jean Collar was injured and damaged as a result of the ignition of liquid petroleum gas manufactured by Shell Oil

Company. The gas was sold and distributed by Shell to Butane Corporation (Butane), and sold at retail by Tate & Hobart Gas & Equipment Company (Tate) to Jean Collar. Prior thereto Butane had entered into a purchasing agreement with Shell in which they had agreed to purchase from Shell certain quantities of liquefied petroleum gas. The following clause was part of that agreement:

11. *Indemnity*: Buyer shall indemnify and hold Shell harmless from and against any and all liability for loss of or damage to property of whatsoever kind or for injury to or death of any person or persons arising out of or in any way connected with the storage, handling, distribution, sale or use of gas hereunder.

Jean Collar filed a complaint for damages in the Arizona Superior Court naming as defendants Shell, Butane, and Tate. The complaint alleged that Tate had negligently delivered the gas to her residence, thereby causing a gas leak which resulted in an explosion causing injury to both her person and her property. It also alleged that Shell and Butane had been negligent in the selection, supervision and training of the distributor of the gas (Tate). When service was made upon Shell, it, through its insurer, Travelers (appellee herein), tendered the defense of the suit to Butane in accord with the above set out agreement of indemnity. Pertinent portions of this letter are set out in the margin.[1]

Butane turned this letter over to Peerless, its insurer (appellant herein), who forwarded it, together with a copy of the complaint and summons served on Butane and Tate, to its attorneys. Peerless also requested an opinion from its attorneys as to the effect of the indemnity agreement on this litigation. In response thereto, these attorneys, on December 17, 1958, sent a letter to Peerless in which, after setting out the provision of the indemnity agreement, stated, "It is our conclusion that under such paragraph it is the duty of and obligation of Butane Corporation to defend such action." In this letter the attorneys also advised Peerless that they would answer for Shell in the Collar litigation.

On January 13, 1959, the Peerless attorneys wrote to Travelers advising it that they had entered an appearance in the action on behalf of Shell Oil Company, and that they had notified Peerless of this action. Some time thereafter— the record does not show exactly when— the Peerless attorneys took the deposition of Jean Collar and forwarded a copy of that deposition to Travelers. On February 25, 1959, Travelers returned the deposition with a letter which contained the following statement:

"Inasmuch as the defense of this matter, on behalf of Shell Oil Company, is being handled under the Hold Harmless agreement by Peerless Insurance Company, we feel that any comments as to the deposition itself, or any possible settlement, would have to come from that source."

Thereafter, the Peerless attorneys were successful in having the complaint dismissed as to Shell and Butane. On March 13, 1959, the attorneys wrote a letter to Peerless advising of this action. A copy of this letter was also sent to Travelers.

After this dismissal Jean Collar filed an amended complaint, naming the same parties as defendants. On March 27, 1959, the attorneys for Peerless wrote

---

1. "We are hereby tendering the defense of this matter on behalf of Shell Oil Company in accordance with your contract titled 'Shell Jobber Agreement—Liquefied Petroleum Gas' dated January 1, 1958 wherein you agreed to indemnify and hold Shell harmless from and against any and all liability for loss of/or damage to the property of whatsoever kind or for injury to/or death of any person or persons arising out of/or in any way connected with the storage, handling, distribution, sale or use of gas thereunder."

\*　　\*　　\*　　\*　　\*

"Would you be good enough to acknowledge receipt of this Summons and Complaint and that you will enter into and defend Shell Oil Company in accordance with your contract."

a letter to Peerless, and sent a copy to Travelers, advising that this amended complaint had been filed by Jean Collar. This letter, copy of which is set out in the margin,[2] called attention to the fact that in the amended complaint an additional element of negligence had been introduced, to wit, the failure to odorize the gas. On March 31, 1959, Travelers advised Shell of the receipt of this letter and of its contents.

There was no further correspondence between the parties for over a year and a half, when, on November 14, 1960, the Peerless attorneys again wrote Travelers. This letter, a copy of which is set out in the margin,[3] advised Travelers that the case had been tried commencing Septem-

2. "Gentlemen:
"An amended complaint has been filed in the above captioned matter. Copy of the same is enclosed herewith. Please note that an additional element of negligence has been introduced in the pleading, to-wit the failure to odorize the gas. In paragraph 5, of the amended complaint, it is alleged that by reason of the inherently dangerous nature of propane gas, reasonable care is required that the defendant corporation impregnate the gas with a suitable odorizing agent. We would like to know if such is true, and, if true, the nature of the malodorant used. We assume that if it was necessary to odorize the gas that the gas delivered to the Spain residence contained such malodorant.
"I also call your attention to the fact that the plaintiff has, in addition to personal injuries, asked $19,000.00 for the destruction of her home. We know that the insurance company paid this loss. Can you get us the name of the insurance company, copies of the proof of loss and the amount paid?
"Under our procedure we are entitled to submit written interrogatories to the plaintiff for answer, and enclosed is a copy of interrogatories submitted, going to the fire loss, and from which we may be able to obtain the information requested."

3. "Dear Mr. Guyer: [November 14, 1960]
"You wrote with regard to the above matter to Butane Corporation under date of December 9, 1958. You further wrote to this office under date of January 12, 1959, with regard to the above matter.
"We advised you we had entered an appearance on behalf of Shell Oil Company pursuant to our employment by Peerless Insurance Company, the insurer of Butane Corporation. You will recall that such advice was given you following your tender of the defense.
"At the time of the initial filing of this claim, damages were sought by the claimant against Shell Oil Company upon the ground that the Shell Oil Company negligently failed to exercise proper care in the selection and training of the distribu-

tors of liquid petroleum gas, and that such failure concurred with negligence on the part of Tate & Hobart Corporation and Butane Corporation to injure the Plaintiff.
"You will also recall that we advised you by copy of our letter dated March 27, 1959, that an amended complaint had been filed by the Plaintiff, in which she raised the question of the failure of Shell Oil Company to odorize the liquid petroleum gas. We also requested that certain information be provided us with respect to such question, and you wrote to the Shell Oil Company, under date of March 31, 1959, with a copy to this office.
"You will also recall that we forwarded you a copy of the deposition of the Plaintiff following the taking of the same. In the event you examined the same, you will recall the Plaintiff's testimony that she did not smell the odor of the liquid petroleum gas even though she made an attempt to do so.
"The amended complaint which set up the claim of a lack of odorization, of course contained allegations of negligence on the part of Tate & Hobart corporation, the service distributor of the gas, and allegations of negligence on the part of Butane Corporation, the state distributor of the gas. The complaint further contained allegations of negligence on the part of Shell Oil Company in negligently selecting supervising and training the distributors of its products.
"The matter at issue was subsequently tried commencing on September 26, 1960. As a result of the trial, the court directed a verdict for the defendant Tate & Hobart corporation and for the defendant Butane Corporation. The sole issue presented to the jury was the question of the negligence of Shell Oil Company in failing to odorize the liquid petroleum gas. The jury deliberated over five hours and subsequently returned a verdict against Shell Oil Company in the amount of $30,000.00.
"We have proceeded to represent your interests in the making of a motion for new trial, and in the making of a motion for judgment notwithstanding the verdict, since no one else could adequately make

ber 26, 1960; that the court had directed a verdict for Tate and Butane; that the sole issue presented to the jury was the question of the negligence of Shell in failing to odorize the liquid petroleum gas; that the jury had rendered a verdict against Shell in the amount of $30,-000. The letter further advised that, in the opinion of the Peerless attorneys, the indemnity agreement did not cover this liability since it was predicated on the sole negligence of Shell. This was the first time that Peerless had indicated the possibility of non-coverage.

Travelers wrote back stating that it did not believe Shell was liable, and ordering Peerless to take whatever steps were necessary to protect Shell's interests. Peerless and Travelers then entered into an agreement in which the status quo would be maintained even though Peerless would prosecute the appeal for Shell. Peerless did so, lost the appeal, and paid the judgment of $30,-000.00 to Collar.

Peerless then brought this action for declaratory judgment against Travelers. Peerless sought a judicial interpretation of the indemnity agreement between Shell and Butane which would show that it did not cover this situation, and that therefore Travelers must reimburse Peerless the monies paid over to Collar. Travelers answered that Peerless was estopped from now denying coverage under the indemnity agreement by reason of its assumption of the defense of the Collar litigation without any reservation of rights.

The district court did not give Peerless the judicial interpretation it sought, but rather held that Peerless was estopped from denying coverage because it had unconditionally accepted the tender of defense made by Shell and Travelers. The court relied upon the rule of estop-

pel in insurance cases such as Pendleton v. Pan American Fire and Casualty Co., 317 F.2d 96 (10th Cir. 1963), where the court stated:

"[W]e think this case is controlled by the long established rule that a liability insurance carrier, which assumes and conducts the defense of an action brought against its insured with knowledge of a ground of forfeiture or noncoverage under the policy, and without disclaiming liability or giving notice of a reservation of its right to deny coverage, is thereafter precluded in an action upon the policy from setting up the ground of forfeiture or noncoverage as a defense. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert the defense of noncoverage. [citations omitted]" 317 F.2d at 99.

We appreciate that an indemnity provision is in some instances viewed in a different light than an insurance contract. E. g., Union Pacific R.R. v. Bridal Veil Lumber Co., 219 F.2d 825, 833 (9th Cir. 1955). However, under the circumstances of this case we feel that the principle of estoppel established in the insurance cases should apply.

In *Pendleton,* supra, the court, after pointing out that the insurance contract there in question did not provide coverage for the accident which occurred, stated—

"The insurer, after making a thorough investigation of the explosion and with full knowledge of the contents of the insurance policy, including the endorsements attached thereto, and of the charges of negligence against Pendleton in the state court suits, undertook to, and did, assume complete

---

such motions. We have substantial hopes that the trial judge will grant the motions. However, it now appears that the liability *solely* arose from the negligence of Shell Oil Company and the indemnity agreement is not effective as to such a situation. With regard to the law on such

subject, I refer you and your attorneys to 27 Am.Jur., pocket part, page 145, Indemnity, Sec. 15, and to the annotation at 175 A.L.R. 32.

"We expect a ruling momentarily from the trial court and will keep you advised."

control of his defense in those suits. It did not at any time notify appellant that it was reserving the right to later contest coverage and it made no attempt to make a non-waiver agreement with him." 317 F.2d at 100.

In the instant case Peerless assumed complete defense of the action with knowledge of the claims of the plaintiff therein as to the alleged negligence of Shell, made no claim of a reservation of rights, proceeded to prepare the case for trial and tried it. There was no correspondence between Peerless and Travelers which indicated any possibility of non-coverage until some six weeks *after* the trial when Peerless informed Travelers that the two parties to the action which it insured had been exonerated, and that the entire liability had been placed on Shell. We think this is a clear case where the doctrine of estoppel should prevent any recovery by Peerless.

Judgment affirmed.